STATE of South Dakota, Plaintiff and Appellee,

v.

Lionel SMITH, Defendant and Appellant.

No. 16740.

Supreme Court of South Dakota.

Considered on Briefs April 25, 1990.

Decided July 11, 1990.

**780**

Gary Campbell, Asst. Atty. Gen., for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Catherine E. Mattson, Rapid City, for defendant and appellant.

WUEST, Chief Justice.

Lionel Smith (Smith) appeals from a judgment of conviction for receiving stolen property. We affirm.

On September 8, 1988, Ron Flora (Flora), a clerk at Flora's Jewelry and Western Wear (Flora's), telephoned the Custer County Sheriff's Office. Flora informed the Sheriff's office a belt buckle was missing from his store. Flora further indicated two men, one wearing a Denver Bronco's shirt, had been in the store and he suspected they shoplifted the belt buckle. This information was relayed to Deputy Sheriff Nels Christensen (Christensen), who was in a patrol car at the time Flora's call was received.

Christensen began to drive to Flora's when Flora called the Sheriff's office a second time, reporting the two men who had been in the store earlier were, at that moment, in the C & M Jewelry Store. Christensen then drove to the C & M Jewelry Store and parked his car in front of this store. Shortly thereafter, two men came out of the store and one was wearing a Denver Bronco's shirt. Christensen "hollered" at them to "wait a minute" as he needed to talk to them. The two men, Steve Lee Parizek (Parizek) and Smith,

stopped. Christensen advised them a belt buckle reportedly had disappeared from Flora's at the time they were in the store. He then asked them if they would submit to a voluntary pat search, and they each agreed. Christensen patted the outside of their clothes, avoiding their crotch areas, and found nothing.

Following the pat search, Christensen asked the two men to accompany him to Flora's so the matter could be cleared up. Both men agreed to do so. Once in Flora's, Parizek and Smith waited, unattended in the front of the store while Flora and Christensen spoke in the back of the store. While speaking with Christensen, Flora identified Smith and Parizek as the two men who were in the store earlier. After discussing this matter with Flora, Christensen left the store with Smith and Parizek. He then asked the two men for identification. Parizek stated that his identification card was in Smith's car. Smith then pointed out where his car was parked. At about this time, Christensen asked Smith and Parizek if they would go with him to the Sheriff's Office to settle the matter. He advised them this was voluntary and they did not have to go. According to Christensen, both Smith and Parizek said they were willing to go. Smith then seated himself in the back seat of the patrol car and Parizek sat in front. Neither man was handcuffed. The three men then proceeded to the Sheriff's office.

Upon arriving at the Sheriff's office, Christensen parked his vehicle, got out and asked Smith and Parizek to wait outside. Smith and Parizek claim Christensen informed them at this time not to go anywhere or do anything. According to Christensen, however, he made no such comment. Christensen then left them unattended, and went to speak with Lieutenant E.L. Rathjen (Rathjen). Christensen discussed this matter briefly with Rathjen and then stepped outside with Rathjen to converse with Smith and Parizek.

While outside, Rathjen asked Smith and Parizek if they understood they were not under arrest. Smith and Parizek informed Rathjen that they did. Rathjen then in-

formed the two men the matter could be cleared up easily if they would submit to a search. Smith indicated he did not want to submit to a search because he had previously been searched by Christensen. Parizek, however, demonstrated no such reluctance as he stated in response to Rathjen's request, "Sure, search me." At this point, Rathjen told Christensen to take Parizek into the office bathroom for a search, and Christensen did so. While Parizek was being searched, Smith asked Rathjen: "Is this a violation of my constitutional rights?" In response, Rathjen informed Smith he would not be forced to do anything that he did not want to do. Rathjen then left Smith alone by the patrol car, and reentered the Sheriff's office.

Having conducted a search of Parizek, Christensen came out of the bathroom where Parizek was searched and showed Rathjen several items of jewelry which Christensen found in the crotch of Parizek's pants. Upon receiving this information, Rathjen then asked Smith to come into the police station. He advised Smith: "Things have changed; we found jewelry on your buddy." Rathjen then asked Smith if he would submit to a search. At that point, Smith reached behind his belt buckle and pulled out a small black box containing Black Hills Gold. Smith offered this to Rathjen, and said, "This is stolen, but it is all I have." Rathjen then ordered Christensen to search Smith and informed Smith that he was under arrest. Upon searching Smith, Christensen found a small package of green leafy material which field test results indicated was marijuana. He also found a leather vest stuffed in Smith's pants.

After their arrest, Smith and Parizek were advised of their *Miranda* rights. Thereafter, the two said little, but did indicate they had come from Hot Springs, South Dakota. In addition to this information, the Sheriff's radio dispatch log for September 8, 1988, showed that approximately three minutes after Christensen reported he was coming in with Smith and Parizek, Susan Avery, Manager of the Four President's Gift Shop in Custer, notified the Sheriff's office two rings had been stolen from her store. Also, approximately one hour after Smith arrived at the Sheriff's office, a representative from the C & M Store arrived at the Sheriff's office to give a statement and identify the stolen property found on Smith and Parizek. At approximately the same time, a representative from the "Leather Factory," also located in Custer, reported to the Sheriff's office and identified the stolen leather vest which had been found on Smith. As a result of these occurrences, Smith had been implicated in three possible thefts.

Shortly after Smith and Parizek were arrested, a Deputy located Smith's car legally parked on main street in Custer. Its doors were locked. A license plate check confirmed this was Smith's vehicle. Rathjen was presented with this information and subsequently went to the scene where the car was located. He inserted one of the keys taken from the suspects into the car door lock and determined the key worked. He then ordered the vehicle towed to the Sheriff's office and impounded, as he intended to get a warrant authorizing a search. Shortly thereafter, Rathjen prepared a search warrant request and affidavit in support thereof. The search warrant request specified the vehicle was to be searched for two specific rings and controlled substances. The next morning the requested search warrant was granted by a circuit court judge and Smith's vehicle was searched. The two rings identified in the search warrant request were found in the pocket of a coat in the back seat of the car. More jewelry was found in the car's trunk. Also in the trunk was a small safe. This was opened by a key taken from Smith. The safe contained, among other things, three silver and turquoise watch bands, later identified as coming from the Capital Rainbow Hills Gift Shop in Custer. The Gift Shop manager testified these three bands, valued at approximately $900.00, were never sold. Because of his possession of this property, Smith was tried and convicted for receiving stolen property.

■ During the trial of this matter, Smith urged the trial court to deny admit-

tance of evidence found during the search of his vehicle on the grounds the seizure of his car violated his Fourth Amendment rights. Smith also requested the trial court to exclude any evidence obtained through the search of his person as he claimed such search also violated his Fourth Amendment rights. Finally, Smith requested the trial court not to admit a photograph submitted by the State which depicted Smith posing by the stolen jewelry with a handgun in each hand. Smith contended that such picture was extremely prejudicial to him as the handguns unfairly portrayed him as a violent person.

The trial court rejected each of Smith's contentions. The trial court concluded the actual search of Smith's vehicle was legal, as it was conducted pursuant to a valid search warrant issued with adequate probable cause. The trial court further concluded that the deputies seizure of Smith's vehicle before obtaining the search warrant was not illegal. In addition, the trial court determined the search of Smith's person did not violate his Fourth Amendment rights since it was incident to his arrest. As a result, the trial court refused to suppress evidence obtained as a result of the search of Smith's vehicle and his person. Lastly, the trial court found the probative value of the photograph depicting Smith with the stolen jewelry outweighed the prejudicial effects such evidence might elicit. Therefore, the trial court allowed the photograph into evidence. Smith now appeals from the judgment of conviction alleging the trial court erred in determining Smith's Fourth Amendment rights were not violated as a result of the seizure search of his car and the search of his person. He further alleges that the trial court erred in allowing the aforementioned photograph into evidence.

We first address whether the seizure of Smith's vehicle constituted a violation of his Fourth Amendment rights. In addressing this issue, we note although Smith's car was seized prior to the issuance of a search warrant, the actual search of the vehicle did not occur until after the search warrant had been issued. Nevertheless, Smith contends that since the seizure was wrongful,

any evidence obtained by searching the seized vehicle should have been suppressed. Upon analysis of the law and facts relating to this issue, we conclude that the seizure of Smith's car did not constitute a violation of Smith's Fourth Amendment rights. Therefore, we hold the trial court did not err in refusing to suppress evidence obtained through the search and seizure of Smith's vehicle.

It is significant to note Smith asserts only the *seizure* of his vehicle constituted a violation of his Fourth Amendment rights. He does not allege the *search* of his vehicle was, in any way, improper. This is a significant fact because "[d]ifferent interests are implicated by a seizure than by a search." *Segura v. United States,* 468 U.S. 796, 806, 104 S.Ct. 3380, 3386, 82 L.Ed.2d 599, 609 (1984); *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85, 94 (1984). A seizure affects only the person's possessory interests; a search affects a person's privacy interests. *United States v. Jacobsen, supra.* As a result, the "heightened protection [which courts] accord privacy interests is simply not implicated where a seizure ..., not a search, is at issue." *Segura, supra,* 468 U.S. at 810, 104 S.Ct. at 3388, 82 L.Ed.2d at 612. Recognizing the generally less intrusive nature of a seizure, the United States Supreme Court has frequently approved warrantless seizures of property, on the basis of probable cause, for the time necessary to secure a warrant. *Segura v. United States, supra; Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979).

In *California v. Carney,* 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), the United States Supreme Court upheld the warrantless search of a lawfully parked, but fully mobile motor home. The Supreme Court noted as a general rule, a warrant must be secured before a search is undertaken. It went on to note, however, there is an exception to this rule under certain circumstances when the property to

be searched is an automobile. This is generally referred to as the "vehicle exception." In applying the "vehicle exception" to the facts in *Carney,* the Supreme Court stated:

> When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes—temporary or otherwise—the two justifications for the vehicle exception come into play. First, the vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving. Second, there is a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling. At least in these circumstances, the overriding societal interests in effective law enforcement justify an immediate search before the vehicle and its occupants become unavailable.

*California v. Carney, supra* 471 U.S. at 392, 393, 105 S.Ct. at 270, 85 L.Ed.2d at 414. Having made this statement, the Supreme Court then determined that the search of the motor home in question was not unreasonable since probable cause to search the vehicle was present, the vehicle was readily movable and it was located in a place not regularly used for residential purposes.

In the present case, Smith's vehicle was lawfully parked on a public street. Furthermore, the vehicle was not being used for residential purposes. These circumstances suggest a reduced expectation of privacy. In addition, the record indicates the vehicle was readily mobile by the turn of an ignition key. Any person in possession of a key to that vehicle could have moved it instantly. Based upon the reasoning set forth in *Carney, supra,* these circumstances would justify a search of the vehicle if probable cause existed. It follows since seizures are less intrusive than searches, the existence of these circumstances would clearly justify a seizure of property if probable cause existed for such a seizure. Here, it is clear and undisputed that the police had probable cause to search Smith's vehicle. Therefore, we

must conclude that the seizure of Smith's vehicle was justified and not unreasonable.

■ Even if we were to conclude that the seizure was unreasonable, we still would not hold the trial court erred in refusing to exclude the evidence obtained from Smith's vehicle. The evidence in question was discovered the day following the seizure, during a search conducted under a valid warrant; it was the product of that search, wholly unrelated to the prior seizure. Had the police never seized the vehicle, but instead conducted a perimeter stake out of the vehicle to prevent anyone from entering the vehicle and destroying the evidence, the items received from this vehicle would have been discovered and seized as it was here. Under these circumstances, the legality of the initial seizure is wholly irrelevant. *See, Segura, supra,* 468 U.S. at 814, 104 S.Ct. at 3390, 82 L.Ed.2d at 615. For this reason also, we conclude the trial court did not err in admitting evidence obtained from Smith's vehicle after it was seized.

■ Smith's next argument concerns whether the trial court erred in admitting evidence obtained as a result of the search of Smith's person. Smith contends that such evidence should have been excluded because the search of his person was conducted without his consent and thus it violated his Fourth Amendment rights. We find no merit in this argument. The trial court specifically found the search of Smith's person was incident to his arrest. Smith presents no substantial evidence which refutes this finding. It is well established that when an arrest is made, it is entirely reasonable for the arresting officer to search the person arrested. This rule is set forth in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), wherein the Supreme Court stated:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape ... In addition, it is entirely reasonable for the arresting officer to

search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction.

*Chimel v. California, supra,* 395 U.S. at 762–63, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. The record in the present case reveals that Smith was arrested shortly after he offered a small box containing Black Hills Gold to Rathjen and informed Rathjen that it was stolen. He was searched at approximately the same time. Thus, it is clear the search of Smith was incident to his arrest. As a result, we must conclude the search was not unreasonable and, hence, it did not violate Smith's Fourth Amendment rights. Therefore, we hold the trial court did not err in admitting evidence obtained through the search of Smith's person.

■ Smith finally argues that the trial court abused its discretion in admitting a photograph which depicted Smith posing by the jewelry in question, holding a handgun in each hand. Smith contends that he was unfairly prejudiced by this photograph as the depiction of him with guns unfairly suggests he is a violent person. According to Smith, the probative value of this photograph is substantially outweighed by its prejudicial effect and thus the photograph should have been excluded under SDCL 19–12–3.[1]

Initially, we note that SDCL 19–12–3 vests a great deal of discretion in the trial court. *State v. Swallow,* 405 N.W.2d 29, 35 (S.D.1987). The trial court in the present case recognized the photograph could have a prejudicial impact upon the jury, but determined this danger of unfair prejudice did not substantially outweigh the photograph's probative value. We find no abuse of discretion in this determination. Throughout the trial, Smith contended the stolen items were innocently obtained by him. As the trial court noted, the depiction of Smith posing by the stolen

jewelry with a handgun in each hand strongly tends to contradict Smith's assertion he innocently obtained this jewelry. While we recognize the photograph may have had some prejudicial effects, a photograph is not inadmissible merely because it incidentally tends to arouse passion or prejudice. *State v. Swallow,* 350 N.W.2d 606, 610 (S.D.1984); *State v. Holland,* 346 N.W.2d 302, 307 (S.D.1984). We are unable to conclude the danger of unfair prejudice substantially outweighed this photograph's probative value.[2] Hence, we conclude the trial court did not err in admitting the photograph in question.

Judgment affirmed.

All the Justices concur.

---

**1.** SDCL 19–12–3 provides:
    Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or need has presentation of cumulative evidence.

**2.** It is significant to note that in an effort to reduce the danger of unfair prejudice, the trial court offered to admonish the jury that it was not to infer from this photograph that Smith was a violent person. Smith objected to this admonition, however, and therefore it was not given to the jury.