CITY OF FARGO, Plaintiff
and Appellant,

v.

Sally A. STUTLIEN, Defendant
and Appellee.

CITY OF FARGO, Plaintiff
and Appellant,

v.

Christopher Michael FRANEK,
Defendant and Appellee.

CITY OF FARGO, Plaintiff
and Appellant,

v.

Charles BOMMERSBACH, Defendant
and Appellee.

CITY OF FARGO, Plaintiff
and Appellant,

v.

Timothy Duane DORNHEIM,
Defendant and Appellee.

CITY OF FARGO, Plaintiff
and Appellant,

v.

William Noble THOMPSON,
Defendant and Appellee.

CITY OF FARGO, Plaintiff
and Appellant,

v.

Michael John SYVERTSON,
Defendant and Appellee.

CITY OF FARGO, Plaintiff
and Appellant,

v.

Jeffrey Merlin MADISON, Defendant
and Appellee.

CITY OF FARGO, Plaintiff
and Appellant,

v.

Clair Luverne HOWARD, Defendant
and Appellee.

Crim. Nos. 930026 to 930033.

Supreme Court of North Dakota.

Sept. 8, 1993.

Thomas J. Gaughan, Asst. City Atty., Fargo, for plaintiff and appellant.

Brian W. Nelson, Fargo, for defendants and appellees.

SANDSTROM, Justice.

These are consolidated appeals by the City of Fargo from a county court order dismissing driving while under the influence charges against Sally Stutlien, Christopher Franek, Charles Bommersbach, Timothy Dornheim, William Thompson, Michael Syvertson, Jeffrey Madison, and Clair Howard (collectively referred to as defendants). We reverse and remand for further proceedings.

I

On December 10, 1990, Fargo Municipal Court Judge Thomas Davies issued a "release from custody" order establishing "minimum periods of detention" for individuals arrested in Fargo for driving while under the influence of intoxicating liquor:

"A DUI/APC defendant who refuses a blood alcohol test will be held in jail for a minimum period of twelve (12) hours from the time of his/her arrest prior to being released on bond pending trial.

"A DUI/APC defendant who submits to a blood alcohol test, the result of such test being a blood alcohol concentration (BAC) of at least ten one-hundredths of one per cent (.10%) by weight, will be held in jail, prior to being released on bond pending trial, until such time as his/her blood alcohol concentration (BAC) is determined to be .05% or less, employing an average alcohol elimination rate of .015% per hour."

On July 29, 1992, the district court, the Honorable Lawrence A. Leclerc, orally granted a petition for writ of habeas corpus by Eric Johnson, a DUI arrestee who was scheduled to be detained for twelve hours

after arrest. On August 11, 1992, Judge Leclerc confirmed his oral order with a written decision, concluding that the "release from custody" order violated Johnson's state constitutional right to bail.[1] On September 15, 1992, the district court, the Honorable Norman J. Backes, granted a writ of habeas corpus to temporarily release one of the defendants in this case, Dornheim, a DUI arrestee who was also scheduled to be detained for twelve hours after arrest. After a subsequent hearing, Judge Backes also concluded that the municipal court's "release from custody" order violated Dornheim's right to bail.[2]

Meanwhile, between April 19, 1992 and September 16, 1992, the other defendants in these cases were arrested in Fargo for DUI. After posting bail, they were held for the scheduled "minimum periods of detention" ranging from eight hours forty minutes to twelve hours. All of the defendants, except Franek, requested a jury trial and their cases were transferred to county court under N.D.C.C. § 40–18–15.1. Franek was tried and convicted in municipal court, and he appealed to county court for trial anew under N.D.C.C. § 40–18–19.

Stutlien, Franek, and Bommersbach moved to dismiss the charges, alleging they had been unlawfully detained under the municipal court's "release from custody" order and were precluded from gathering exculpatory evidence. The remaining defendants joined their motion.

Like the two district court judges in the habeas corpus proceedings, the county court also concluded that the municipal court's "release from custody" order violated the defendants' constitutional right to bail. The county court further concluded the order de-

prived the defendants of their right to gather exculpatory evidence and witnesses and to obtain an additional, independent blood alcohol test. The court determined that, as a result, the defendants were unable to obtain a fair trial and dismissed the charges against them. The City appealed.

## II

The City argues that, under *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), and *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Fourth Amendment of the United States Constitution permits law enforcement officials to detain all warrantless, misdemeanor arrestees for up to 48 hours before a probable cause determination by a magistrate. Therefore, the City argues the municipal court's "release from custody" order is constitutional because it does not require an arrestee to be detained for more than 48 hours.

In *Gerstein,* 420 U.S. at 113–114, 95 S.Ct. at 862–63, the United States Supreme Court said a neutral and detached magistrate should, whenever possible, determine whether probable cause exists prior to an arrest. The Court said, however, it had never invalidated a warrantless arrest supported by probable cause, because the policemen's on-the-scene assessment of probable cause provided legal justification for the arrest and for a brief period of detention for administrative steps incident to the arrest. The Court held the Fourth Amendment requires a "prompt" judicial determination of probable cause as a prerequisite to extended pretrial detention following a warrantless arrest. *Gerstein,* 420 U.S. at 114, 125, 95 S.Ct. at 863, 869.

1. Art. I, § 11, N.D. Const., provides:
   "*Section 11.* All persons shall be bailable by sufficient sureties, unless for capital offenses when the proof is evident or the presumption great. Excessive bail shall not be required, nor excessive fines imposed, nor shall cruel or unusual punishments be inflicted. Witnesses shall not be unreasonably detained, nor be confined in any room where criminals are actually imprisoned."

2. In *Johnson v. Raftevold,* 505 N.W.2d 110 (N.D. 1993), we dismissed appeals by the Fargo Chief

of Police from the district court's orders granting the petitions for habeas corpus by Dornheim and Johnson, because the appeals were not authorized by statute. We declined to treat the appeals as requests for the exercise of our supervisory jurisdiction, because the petitioners were no longer involuntarily confined and the issues raised in the cases could be resolved in appeals by the prosecution from orders dismissing criminal complaints, or in appeals by DUI arrestees from criminal convictions.

In *County of Riverside*, 500 U.S. at ——, 111 S.Ct. at 1670, 114 L.Ed.2d at 63, the United States Supreme Court elaborated on the meaning of "prompt":

"Taking into account the competing interests articulated in Gerstein, we believe that a jurisdiction that provides judicial determinations of probable cause within 48 hours of [a warrantless] arrest will, as a general matter, comply with the promptness requirement of Gerstein. For this reason, such jurisdictions will be immune from systemic challenges.

"This is not to say that the probable cause determination in a particular case passes constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate Gerstein if the arrested individual can prove that his or her probable cause determination was delayed unreasonably. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake. In evaluating whether the delay in a particular case is unreasonable, however, courts must allow a substantial degree of flexibility. Courts cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities.

"Where an arrested individual does not receive a probable cause determination within 48 hours, the calculus changes. In such a case, the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends. A jurisdiction that chooses to offer combined proceedings must do so as soon as is reasonably feasible, but in no event later than 48 hours after arrest."

■ The Supreme Court's decisions in *Gerstein* and *County of Riverside* allow a flexible procedure under the Fourth Amendment to combine post-arrest probable cause determinations with other pretrial procedures, such as an arraignment, and to minimize the time that presumptively innocent individuals spend in jail after the completion of the administrative steps incident to a warrantless arrest. Although those decisions allow detention for completion of the administrative steps incident to a warrantless arrest, they do not involve blanket "minimum periods of detention" and specifically disapprove "delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." *County of Riverside*, at ——, 111 S.Ct. at 1670, 114 L.Ed.2d at 63. The City's reliance on *Gerstein* and *County of Riverside* is misplaced, because those decisions do not involve an expedited procedure for release on bail in traffic cases, and blanket "minimum periods of detention, prior to release pending trial" for all DUI arrestees.

The City nevertheless argues that N.D.C.C. § 29–08–02 authorizes the municipal court's order.[3] The defendants respond that the municipal court's order violates their constitutional right to be released after they have posted bail. They argue that N.D.C.C. § 29–08–02 dispenses with the requirement for a bail hearing and does not authorize detention of a DUI arrestee after bail has been posted.

Because we refrain from deciding constitutional issues if we can decide the case on appropriate, alternative grounds, *Minot Daily News v. Holum*, 380 N.W.2d 347 (N.D. 1986), we first consider whether N.D.C.C. § 29–08–02 authorizes the municipal court's "release from custody" order. Because we

---

3. The City concedes that Rule 46, N.D.R.Crim.P., which provides for pretrial release on bail *after* an initial appearance before a magistrate, does not authorize the municipal court's order and that the municipal court's reliance on that rule is mistaken.

conclude it does not, we need not reach the constitutional issues.[4]

In construing statutes, our duty is to ascertain the legislature's intent. *County of Stutsman v. State Historical Society*, 371 N.W.2d 321 (N.D.1985). We construe statutes on similar subjects to harmonize them, if possible, and to give full force and effect to legislative intent. *Newland v. Job Service North Dakota*, 460 N.W.2d 118 (N.D.1990).

Section 29-08-02, N.D.C.C., says:

"Admission to bail defined—Delegation of authority by magistrate. Admission to bail is the order of a competent court or magistrate that the defendant be discharged from actual custody upon an undertaking with sufficient sureties for his appearance. Any magistrate or municipal judge in this state may in his discretion designate, authorize, and appoint an additional person or persons to arrange, receive, and approve bail in cases involving traffic violations." [Emphasis added].

The underscored language allows a magistrate or a municipal judge to appoint persons to "arrange, receive, and approve bail" for traffic violations. That language was enacted in 1969 at the same time as N.D.C.C. § 29-08-21, was amended to allow the court to treat the forfeiture of bail as a final disposition of a traffic violation. 1969 N.D.Laws ch. 300.[5] The purpose of the amendments to N.D.C.C. §§ 29-08-02 and 29-08-21, was to allow a court to establish a bail forfeiture schedule to accommodate the administrative disposition of traffic violations. The effect of those amendments was to allow for the expedited release of individuals arrested for traffic violations without triggering the usual criminal procedures; it was not to permit municipal courts to authorize "minimum periods of detention, prior to release pending trial."

In seeking to protect or promote the societal interest in the "safety of the general public" and "a DUI/APC defendant's personal safety," the municipal court overlooked the statute which already provides a mechanism for satisfying those safety objectives. Section 5-01-05.1, N.D.C.C., says:

"*Public intoxication—Assistance—Medical care.* A peace officer has authority to take any apparently intoxicated person to his home, to a local hospital, or, whenever such person constitutes a danger to himself or others, to a jail for purposes of detoxication. A duly licensed physician of such local hospital has authority to hold such person for treatment up to seventy-two hours. Such intoxicated person must not be held in jail because of intoxication more than twenty-four hours. An intoxicated person must not be placed in a jail unless a jailer is constantly present within

4. We note that, in construing constitutional provisions like Art. I, § 11, N.D.Const., other courts, drawing upon the difference between the state and the federal constitutional provisions for bail, have held preventive detention of persons dangerous to themselves or society is not contemplated under the state constitutional provisions guaranteeing the right to bail. *Petition of Humphrey*, 601 P.2d 103 (Okla.Crim.App.1979); *In re Underwood*, 9 Cal.3d 345, 107 Cal.Rptr. 401, 508 P.2d 721 (1973). *See Simms v. Oedekoven*, 839 P.2d 381 (Wyo.1992). *Compare United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) [18 U.S.C. § 3141 et seq., The Bail Reform Act of 1984, which carefully limits pretrial preventive detention after compliance with a number of procedural safeguards at detention hearing, is not facially invalid under due process or excessive bail clause] *with Aime v. Commonwealth*, 414 Mass. 667, 611 N.E.2d 204 (1993) [amendments to Massachusetts bail statute which generally allowed preventive detention without *Salerno* procedural safeguards violated due process clause].

Although we do not decide this case on constitutional grounds, we recognize that this court has noted the similarity between Art. I, § 11, N.D. Const., and the corresponding California constitutional provision. *In re West*, 10 N.D. 464, 88 N.W. 88, 89 (1901). We also observe that the municipal court's blanket order for minimum periods of detention does not include the procedural safeguards described in *Salerno*.

5. The amendment to N.D.C.C. § 29-08-21 said, in part:
"[T]he court, at the time bail is ordered forfeited in cases charging violation of vehicular traffic laws or ordinances, may in his [sic] judicial discretion order that no further proceedings be had in the case."
1969 N.D.Laws ch. 300, § 2. Section 29-08-21, N.D.C.C., has been superseded by Rule 46, N.D.R.Crim.P., which addresses bail after an initial appearance.

hearing distance and medical services are provided when the need is indicated. Upon placing such person in a hospital or jail, said peace officer shall notify the intoxicated person's family as soon as possible. Any additional costs incurred by the city or county on account of an intoxicated person shall be recoverable from such person."

Under that statute, a peace officer has discretion to take an "apparently intoxicated" person home, to a hospital, or, whenever the apparently intoxicated person constitutes a danger to anyone, to a jail for detoxification for no more than twenty-four hours.[6] *McCroskey v. Cass County*, 303 N.W.2d 330 (N.D.1981). If a peace officer takes an apparently intoxicated person to jail for detoxification, the jail must provide medical services and a jailer within hearing distance. Additionally, the peace officer must notify the apparently intoxicated person's family as soon as possible, presumably so the family may transfer the apparently intoxicated person from jail to home.

Section 5-01-05.1, N.D.C.C., was enacted in 1969 when public intoxication was decriminalized. 1969 N.D.Laws ch. 91. At the same time, the Legislature also amended N.D.C.C. § 29-06-15 to specifically authorize warrantless arrests for DUI. 1969 N.D.Laws ch. 91, § 4. The authorization of warrantless arrests for DUI was added during Senate deliberations, and we have found no legislative history explaining the reason for that addition. However, we believe the simultaneous enactment of provisions for warrantless arrests for DUI and for detention for detoxification of apparently intoxicated persons evidences a legislative recognition that the safety concerns associated with the detention of DUI arrestees can be resolved under the detoxification procedures upon a finding that a specific person is "apparently intoxicated," rather than by general "minimum periods of detention, prior to release pending trial" for all DUI arrestees.

In order to give meaning to both N.D.C.C. §§ 29-08-02 and 5-01-05.1, we conclude that N.D.C.C. § 29-08-02 was intended to facilitate an administrative procedure for admission to bail and release for traffic offenses and not to authorize the municipal court to order blanket minimum periods of detention, prior to release pending trial, for all DUI arrestees. Instead, we believe N.D.C.C. § 5-01-05.1 establishes the discretionary procedure for peace officers to adequately protect the safety of the public and persons found to be apparently intoxicated.

We therefore hold that the municipal court's blanket order for "minimum periods of detention, prior to release pending trial" for all DUI arrestees was not authorized by rule or by statute, and was unlawful.

### III

■ We next consider the remedy available in the criminal prosecutions of DUI arrestees who were unlawfully detained under the municipal court's order. It is well established that a defendant has a fundamental due process right to present witnesses and introduce evidence in defense of a criminal prosecution. *E.g., Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973); *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *see State v. Flohr*, 301 N.W.2d 367, 371 (N.D.1980).

In these cases, the City argues the defendants failed to establish that their "minimum periods of detention" denied them a reasonable opportunity to secure an additional, independent blood alcohol test under N.D.C.C. § 39-20-02, or prevented them from obtaining other exculpatory evidence. The City thus contends that the county court erred in dismissing the criminal charges against these defendants.

The defendants respond that their "minimum periods of detention" deprived them of

---

6. Because of the transitory nature of intoxication and the substantial public safety interests, emergency detention statutes for detoxification have generally withstood due process, overbreadth, and vagueness challenges. *Donahue v. Rhode Island Dept. of Mental Health*, 632 F.Supp. 1456 (D.R.I.1986); *State v. Friend*, 711 S.W.2d 508 (Mo.1986); *Houtz v. State*, 105 Wash.2d 302, 714 P.2d 1176 (1986). *See* 14 C.J.S. *Chemical Dependents* § 3 (1991).

their right to obtain exculpatory evidence, such as being observed by third parties who could have testified that they were not under the influence, and to obtain an additional, independent blood alcohol test. They argue that their minimum periods of detention adversely affected their ability to adequately prepare a defense to the charges and that dismissal was the only adequate remedy.

■ An invalid arrest or an unlawful detention is ordinarily not grounds for dismissing a complaint, or voiding a subsequent conviction. *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 866, 43 L.Ed.2d 54 (1975); *State v. Biby*, 366 N.W.2d 460, 462 (N.D. 1985); *State v. Mees*, 272 N.W.2d 284, 287 (N.D.1978); *State v. Hager*, 271 N.W.2d 476, 480 (N.D.1978). Rather, the usual sanction for an invalid arrest or an unlawful detention is the suppression of statements or physical evidence discovered as a result of the arrest or detention. *Mees* at 287; *Hager* at 480; *see State v. Frye*, 245 N.W.2d 878, 882 (N.D. 1976) [defendant not entitled to new trial on grounds that he was not brought before a magistrate without unnecessary delay where there were no allegations of interrogation or elicitation of damaging statements during delay]; *State v. Ankney*, 195 N.W.2d 547, 552 (N.D.1972) [no unreasonable delay in taking accused before magistrate where he was arrested on Sunday evening and appeared before magistrate the following day and delay was not used to secure damaging statements]; *State v. Barlow*, 193 N.W.2d 455, 461 (N.D.1971) [three-day delay in bringing defendant before magistrate was not unreasonable since there was no evidence of interrogation or elicitation of damaging statements during delay].

In analogous cases involving the effect of prosecutorial delay in charging an offense on a defendant's due process right to present a defense, the defendant must establish that the delay actually prejudiced the defendant's right to a fair trial. *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971) [due process clause may provide a basis for dismissing an indictment if the defendant can show at trial that prosecutorial delay has prejudiced the defendant's right to a fair trial]; *State v. Weisz*, 356 N.W.2d 462, 464 (N.D.1984) [no due process violation where ten-month delay in bringing charges was attributed to necessity of continued investigation and there was no evidence of prejudice to defendant]; *State v. Denny*, 351 N.W.2d 102, 104–105 (N.D.1984) [no due process violation warranting dismissal of charges where defendant failed to show that thirteen-month delay in bringing charges caused actual prejudice to or impairment of defense and there was evidence of a legitimate continuing investigation]; *State v. Denny*, 350 N.W.2d 25, 27–29 (N.D.1984) [trial court did not err in denying defendant's motion to dismiss charges on ground of nine-month delay in charging offense where there was legitimate reason for continuing investigation and there was no evidence of actual prejudice to defendant's right to a fair trial].

■ The foregoing authorities thus indicate that, in addition to suppression of physical evidence or statements discovered as a result of an unlawful detention, dismissal of criminal charges may be an appropriate remedy if the defendant can establish that the detention actually prejudiced the defendant's due process right to a fair trial. *See also State v. Knoll*, 322 N.C. 535, 369 S.E.2d 558 (1988).

■ Also, under N.D.C.C. § 39–20–02, a DUI arrestee has a statutory right to an independent blood alcohol test in addition to the test taken at the direction of law enforcement officials. A DUI arrestee must be afforded a reasonable opportunity to obtain an additional, independent test. *State v. Messner*, 481 N.W.2d 236, 240 (N.D.1992); *State v. Dressler*, 433 N.W.2d 549, 550 (N.D.Ct.App.1988).

In *Messner*, we recently reviewed a trial court's denial of a motion to suppress the results of an intoxilyzer test given by law enforcement officials. The DUI arrestee argued that he was not afforded a reasonable opportunity to obtain an additional, independent test. We concluded, however, that he had not established he was denied a reasonable opportunity to secure an independent test and affirmed the trial court's denial of the motion to suppress. *See also State v. Lorenzen*, 401 N.W.2d 508 (N.D.1987).

In *Dressler*, the North Dakota Court of Appeals affirmed the suppression of the results of blood and breath tests administered at the direction of law enforcement officials. The court concluded the defendant was deprived of a reasonable opportunity to exercise his statutory right to an additional, independent test. The court also said dismissal may be an appropriate remedy for the violation of a DUI arrestee's statutory right to an additional, independent test. *Dressler* at 551.

*Messner* and *Dressler* indicate suppression of the results of a blood test given by law enforcement officials is an appropriate remedy for the denial of a reasonable opportunity to obtain an additional, independent blood alcohol test; and dismissal of the criminal charges may also be warranted. Implicit in *Dressler* and consistent with our decisions involving the sanctions for pre-accusatorial delays is the necessity that, in order to warrant dismissal of charges, the defendant must establish the detention actually prejudiced the defendant's right to present a defense and precluded the defendant from obtaining a fair trial.

In *Madison v. North Dakota Department of Transportation*, 503 N.W.2d 243, 246 (N.D.1993), however, we recently held the Department of Transportation's "institutional noncompliance" with N.D.C.C. § 28–32–06, regarding waiver of the rules of evidence at an administrative hearing, warranted reversal of a license revocation where "[e]xcept for Madison's fear of testifying ... the ... waiver ... did not otherwise prejudice him." In *Madison*, the Department of Transportation's obvious misreading or ignoring of N.D.C.C. § 28–32–06 had been rejected in at least two prior district court decisions, and we concluded the "systematic disregard" of that statute by the Department warranted reversal of a license revocation. *See also State v. Steffes*, 500 N.W.2d 608, 614 (N.D. 1993) [actions by the State that are potentially prejudicial to an accused, like the haphazard handling and destruction of evidence, may warrant different rules if the destruction of the evidence is commonplace].

█ In these cases, the arrests and detentions of Bommersbach, Stutlien, Franek, and Syvertson all occurred before Judge Leclerc's decision on August 11, 1992, in the first habeas corpus proceeding. Our decision in *Madison* does not help those defendants. The arrests and detentions of Thompson, Madison, Howard, and Dornheim all occurred shortly after Judge Leclerc's decision in the first habeas corpus proceeding and before Judge Backes's final decision on December 10, 1992, in the second habeas corpus proceeding. We decline to order a *Madison* result for those four defendants because of the close chronological relationship of their arrests to the habeas corpus decisions. *See Lefor Educational Ass'n v. Lefor Public School Dist.*, 285 N.W.2d 524, 533 (N.D.1979) [reliance upon prior court decisions is not always justified when ambiguous statutes are not clarified until after actions complained of had taken place]. We hold, in order to warrant dismissal of the charges, each defendant must establish that his or her detention actually prejudiced the right to a fair trial. *See United States v. Marion; State v. Denny.*

In these cases, the trial court heard testimony from two defense attorneys about the necessity of quickly gathering exculpatory evidence in DUI cases and the potential for loss of exculpatory evidence for DUI arrestees who are detained after their arrest. The court said:

"Evidence in DUI/APC cases dissipates quickly, the Defendants only have a short period of time to get a second independent chemical test or to find third persons who may testify on their behalf as to the degree of their impairment. In each of these cases, the length of time the Defendants were incarcerated after making bail precluded them both from the opportunity to obtain an independent test and the opportunity to gather meaningful evidence on their behalf. In each of the above cases, the Defendants' incarceration resulted in their deprivation of constitutional rights. Each Defendant could have secured his release from detention and could have had access to friends and family who would have been available to testify on their behalf. Each of the Defendants' confinement came during the crucial period in which they could have gathered evidence on their

behalf and had family and friends observe them and form opinions as to their condition following arrest. This opportunity to gather evidence and to prepare a case in their own defense was lost to each Defendant as a direct result of the unconstitutional actions of the City. The lost opportunities in each of these cases to secure independent proof of sobriety, and to secure a second test for blood alcohol content constitute prejudice to the Defendants in these cases."

■ The trial court generally recognized that one of the elements of DUI is intoxication and the physical characteristics of that condition dissipate with the passage of time. The parties stipulated that the police made no inquiry about the release of any of the defendants to another person and some of the defendants were uncooperative, but none were unruly or a threat to themselves or others to the extent they would have been arrested for disorderly conduct or placed in jail for detoxification. The defendants, however, presented no evidence about the particular circumstances of their detentions and whether they were denied a reasonable opportunity to obtain an additional, independent blood alcohol test, or whether their detentions actually prejudiced their opportunity to prepare a defense and receive a fair trial. *Compare State v. Knoll.* The trial court's decision indicates it considered factors which will always be present with this offense, particularly the dissipation of alcohol, and, because of those factors, assumed the defendants were prejudiced by their minimum periods of detention. That assumption is contrary to our decisions requiring DUI arrestees to show they were denied a reasonable opportunity to obtain an additional, independent blood alcohol test, *State v. Messner,* and our decisions requiring defendants to show their right to a fair trial was actually prejudiced. *State v. Weisz; State v. Denny; State v. Denny.* In the absence of evidence that these minimum periods of detention actually prejudiced the defendants' right to present a defense and have a fair trial, the trial court's dismissal of the charges was speculative and premature. *See United States v. Marion.*

We thus conclude the county court erred in dismissing these cases. We reverse and remand for further proceedings.

VANDE WALLE, C.J., and NEUMANN and MESCHKE, JJ., concur.

LEVINE, Justice, concurring and dissenting.

I agree with the majority's analysis, except for its conclusions that the defendants must show actual prejudice arising from their illegal incarceration and that they failed to establish that prejudice.

Because of the context of the cases we are considering, namely, that all defendants should have been released from detention because they met all the legal requirements established in the bail schedules, the "analogous" cases relied upon by the majority to require proof by the defendants of actual prejudice, are wholly inapposite. Those cases do not involve defendants who met all the requirements of bail but were, nonetheless, kept in jail. It is one thing to require of the defendant a showing of actual prejudice in a case where the procedural defect is mere delay. It is quite another to require it when the defect is not delay but a wholly illegal deprivation of liberty. If we are relying on analogy to require proof of actual prejudice by the defendant, then the analogy should be drawn from *County of Riverside* and accordingly, the City should bear the burdens of persuasion and production on the issue of actual prejudice just as it would in establishing the reasonableness of a delay of over forty-eight hours between a warrantless arrest and a judicial determination of probable cause. *See County of Riverside v. MacLaughlin,* 500 U.S. 44, ——, 111 S.Ct. 1661, 1670, 114 L.Ed.2d 49, 63 (1991) [requiring government to show "a bona fide emergency or other extraordinary circumstances" when existence of probable cause is not determined within forty-eight hours of warrantless arrest]; *see also State v. Abell,* 383 N.W.2d 810, 812 (N.D.1986) [placing burden on prosecution to show that jury misconduct held no reasonable possibility of prejudice to defendant, "consistent with the basic premise that a defendant is entitled to a fair and impartial trial and with the prosecution's burden to

affirmatively prove every element of the crime charged"].

Given the obvious problems of proof facing these wrongly jailed defendants, clearly and carefully set forth by Judge Leclerc, it seems fair and reasonable to require nothing more from these defendants, incarcerated after they posted bail and should have been freed, than their attorneys' descriptions of their potential defenses and to require the City to establish lack of active prejudice by proving that the defendants did not ask for independent tests and appeared to be falling-down drunk so that witnesses to their respective appearance would have been of no assistance to their defense. Then, and only then, should the defendants be obliged to refute such evidence and place the issue of actual prejudice in dispute for resolution by the judge, with the City bearing the risk of non-persuasion. Here, the City produced no such evidence: That failure of production should be conclusive.

I would affirm.