STATE of North Dakota, Plaintiff
and Appellant,

v.

Nick E. DRESSLER, Defendant
and Appellee.

Cr. No. 880090CA.

Court of Appeals of North Dakota.

Dec. 12, 1988.

Review Denied Feb. 10, 1989.

Tom M. Henning (argued), Asst. State's Atty., Dickinson, for plaintiff and appellant.

Freed, Dynes, Reichert & Buresh, P.C., Dickinson, for defendant and appellee; argued by Ronald A. Reichert.

PER CURIAM.

The State of North Dakota has appealed from a county court order granting Nick E. Dressler's motion to suppress the results of blood and breath tests to determine the alcoholic content of his blood. We affirm.

At approximately 10:30 p.m. on December 1, 1987, Stark County Deputy Lawrence Kitzman arrested Dressler about seven miles north of Richardton for driving while under the influence of alcohol in violation of § 39–08–01, N.D.C.C.[1]  Dressler

---

1. Section 39–08–01(1), N.D.C.C., provides:

   "*39–08–01. Persons under the influence of intoxicating liquor or any other drugs or substances not to operate vehicle—Penalty.*

   "1. A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:

   "a. That person has a blood alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test within two hours after the driving.

   "b. That person is under the influence of intoxicating liquor.

   "c. That person is under the influence of any drug or substance or combination of

requested that a blood test be taken in Richardton. Kitzman said they were not going to Richardton because the hospital in Richardton had refused to draw blood samples in the past.[2] Kitzman transported Dressler to Dickinson, where Dressler submitted to a blood test at St. Joseph's Hospital and to a breath test at the Southwest Multi–County Correction Center. Dressler did not again request an additional test.

The county court granted Dressler's motion to suppress evidence of the results of the blood and breath tests administered at Kitzman's direction. The State appealed, contending that Dressler was not entitled to his own blood test until after submitting to a test requested by Kitzman, and that Dressler was not prevented from obtaining his own test.

Section 39–20–01, N.D.C.C., provides that a motorist is deemed to have consented to a chemical test to determine the alcoholic content of his blood; provides for the administration of a test upon an arrested person at the direction of a law enforcement officer; and provides that refusal to submit to a test will result in revocation of driving privileges. Section 39–20–02, N.D.C.C., provides a motorist with a right to an additional test:

> "The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer with all costs of an additional test or tests to be the sole responsibility of the person charged. The failure or inability to obtain an additional test by a person does not preclude the admission of the test or tests taken

at the direction of a law enforcement officer."

■ The State contends that § 39–20–02, N.D.C.C., "clearly means that the person must have been tested before his right to obtain his own test has attached." The State's reliance upon *State v. Larson*, 313 N.W.2d 750 (N.D.1981), is misplaced because that case did not involve an issue about when a motorist's right to a test by a person of his own choosing attached. The State's contention, however, does find support in *Huff v. State*, 144 Ga.App. 764, 242 S.E.2d 361, 362–363 (1978) ("The statutory rights to alternate tests ... do not attach until the state has performed its tests."), and *Greenwood v. Dep't of Motor Vehicles*, 13 Wash.App. 624, 536 P.2d 644, 646 (1975) ("[A] person ... has the right to have tests of his own choosing *after* he has either submitted to or refused the test or tests directed by the law enforcement officer.").

Section 39–20–02, N.D.C.C., need not be rigidly applied, without regard to varying circumstances. "[R]espect for the statutory right should be given willingly, and not reluctantly." *People v. Underwood*, 153 Mich.App. 598, 396 N.W.2d 443, 444 (1986). We believe that under § 39–20–02, N.D.C.C., a person arrested for driving under the influence of alcohol must be afforded a reasonable opportunity to secure an additional test by a person of his own choosing if he requests one. In some cases, that reasonable opportunity may arise before a test has been administered at the direction of a law enforcement officer. "[T]he meaning of a 'reasonable opportunity' to obtain an examination may vary depending on the circumstances." *Commonwealth v. Alano*, 388 Mass. 871, 448 N.E.2d 1122, 1128 (1983).

drugs or substances to a degree which renders that person incapable of safely driving.

"d. That person is under the combined influence of alcohol and any other drugs or substances to a degree which renders that person incapable of safely driving.

"The fact that any person charged with violating this section is or has been legally entitled to use alcohol or other drugs or substances is not a defense against any charge for violating this section, unless a drug which predominately caused impairment was used only as directed or cautioned by a practitioner

who legally prescribed or dispensed the drug to that person."

**2.** The Administrator of the Richardton Community Hospital stated in an affidavit that the hospital has no policy refusing anyone the opportunity of having a blood sample drawn; that Dressler could have had a blood sample drawn upon request; and that the hospital "has never communicated to law enforcement agencies or officers that they would not draw blood samples."

■ Law enforcement officers need not assist people in obtaining independent tests (*Commonwealth v. Alano, supra,*) or even advise them of the right to an additional test [*State v. Rambousek,* 358 N.W.2d 223 (N.D.1984)]. Law enforcement officers, however, "must not prevent or hinder an individual's timely, reasonable attempts to obtain an independent examination." *Commonwealth v. Alano, supra,* 448 N.E.2d at 1128. *See also City of Blaine v. Suess,* 93 Wash.2d 722, 612 P.2d 789 (1980). Law enforcement officers must afford a reasonable opportunity and a motorist's request for an additional test by a person of his own choosing must be a reasonable one. 4 R. Erwin, *Defense of Drunk Driving Cases* § 30.06[3], p. 30–28 (3rd ed. 1988). "What may be reasonable in one locality may be unreasonable in another." *Id.*

■ What is reasonable in circumstances involving arrest in a large city with a wealth of testing facilities readily available may not be reasonable in circumstances involving a late-night arrest in a rural area where testing facilities are few and far between. The probative value of a blood test diminishes with the passage of time [3] and "[i]n a short period of time an intoxicated person may 'sober up' sufficiently to negate the materiality of a blood test where the sample has not been timely withdrawn." *In re Martin,* 58 Cal.2d 509, 24 Cal.Rptr. 833, 374 P.2d 801, 803 (1962). Thus, the time available for securing a test at the direction of a law enforcement officer and for an additional test requested by an arrested motorist will affect the reasonableness of both their actions.

In its order granting Dressler's motion to suppress, the county court stated:

"The testimony reveals that the Defendant clearly and unequivocally requested a blood test at the Richardton Community Hospital. He was informed that Richardton Community Hospital had not in the past obliged requests to draw blood samples by law enforcement officers and the officer therefore declined to transport the Defendant a few hundred yards to the Richardton Community Hospital. Rather, the Defendant was transported the 23 miles to St. Joseph's Hospital in Dickinson. Defendant failed to subsequently renew his request.

"In order for Section 39–20–02 to be meaningful, the officer could easily have taken the Defendant to Richardton Community Hospital for the blood test that had been requested by Defendant with no inconvenience or expense to the county."

Here, there was a late-night arrest in a rural area and Dressler's request that he be administered a blood test at Richardton Community Hospital, a readily-available facility for securing a blood test, was a reasonable request in view of the long distance involved in traveling to Dickinson and the length of time involved in such a trip, especially in view of the ease with which Kitzman could have complied with the request. As the county court observed, it was just "a few hundred yards" to the Richardton hospital and 23 miles to St. Joseph's Hospital in Dickinson, and Kitzman "could easily have taken" Dressler to the hospital in Richardton "with no inconvenience or expense to the county." Under the circumstances presented, in view of the ease with which Kitzman could have complied with Dressler's request, Kitzman's false and misleading statement that the Richardton hospital refused to draw blood samples for alcohol testing, and the fact that Kitzman would have had ample time for another test in Dickinson if he had complied with Dressler's request, we conclude that Dressler was deprived of a reasonable opportunity to exercise his statutory right to an additional test by a person of his choosing.

■ The results of chemical tests administered at the direction of law enforcement officers may be suppressed, or charges dismissed, when a motorist is not afforded his statutory right to an independent test. *See, e.g., State v. Hughes,* 181 Ga.App. 464,

---

**3.** We note that § 39–08–01(1)(a), N.D.C.C., quoted in footnote 1, *supra,* refers to a two-hour time period.

352 S.E.2d 643 (1987); *People v. Underwood, supra,* and other decisions collected in Anno., *Drunk Driving: Motorist's Right to Private Sobriety Test,* 45 A.L. R.4th 11 (1986) and Supp. In *State v. Anderson,* 336 N.W.2d 634 (N.D.1983), our supreme court affirmed an order suppressing the results of a chemical test when the officer did not arrest the defendant before testing in accordance with § 39–20–01, N.D.C.C. As we have already determined, Dressler was deprived of a reasonable opportunity to exercise his statutory right to an additional test by a person of his choosing. In view of the ease with which Kitzman could have complied with Dressler's reasonable request for a blood test in Richardton and the distance and time involved in going to Dickinson, we are not persuaded that the lower court erred in suppressing the results of the blood and breath tests administered at Kitzman's direction.

We are not unmindful of that part of § 39–20–02, N.D.C.C., providing that "[t]he failure or inability to obtain an additional test by a person does not preclude the admission of the test or tests taken at the direction of a law enforcement officer." We agree with the court in *State v. Hilditch,* 36 Or.App. 435, 584 P.2d 376, 377 (1978) construing similar statutory language:

"Thus, we think the term 'failure' to obtain a blood test must refer to the situation where an arrestee makes no effort or request to obtain a test. Likewise, 'inability' to obtain a test refers to the situation where, for some reason independent of the conduct of either the arrestee or the police, such as loss of the blood sample by the hospital performing the test, an independent chemical analysis cannot be obtained. Where, as here, the arrestee does not obtain an independent test because he is denied a *reasonable* opportunity to do so by the police, there is neither a 'failure' nor an 'inability' to obtain a test under the statute."

AFFIRMED.

HEEN, Chief Surrogate Judge, and KIRK SMITH and BENNY A. GRAFF, District Judges, concur.