**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Brian Keith MESSNER, Defendant and Appellant.**

Cr. No. 910234.

Supreme Court of North Dakota.

Feb. 20, 1992.

---

A. Fred Arnason (argued), Asst. State's Atty., Grand Forks, for plaintiff and appellee.

Patrick O. Sogard (argued), Grand Forks, for defendant and appellant.

MESCHKE, Justice.

Brian Messner appeals from a conviction for driving under the influence of alcohol. He asserts that the trial court should have suppressed the results of an intoxilyzer test because he was denied the opportunity for an independent blood test. We disagree, and therefore affirm the conviction.

On February 1, 1991, Officer Jerry Olson of the Highway Patrol was informed that a person driving northbound on Interstate 29 was "all over the road." Olson located the car and observed it "swerving back and forth in the driving lane, across the center line a couple times." Olson stopped the car driven by Messner.

After Messner failed several field sobriety tests, Olson arrested him for driving under the influence and transported him to the Grand Forks County Correctional Center. Messner consented to an intoxilyzer test. During the testing, Messner asked to make a telephone call. Olson would not allow Messner to telephone anyone until completion of the intoxilyzer test. Messner also requested that he be allowed to take a blood test "afterward." Apparently, Olson did not respond to Messner's request for a blood test, except to say "that we wanted him to take our test right now." Although Olson admitted that Messner had requested a blood test, Olson testified that "[i]t was never brought up again. In fact, I forgot about it."

Messner completed the intoxilyzer test on his third attempt, registering a .18 percent blood alcohol content. Messner was

then placed in a jail cell and was given access to a telephone. The record does not disclose whether Messner used the telephone. In any event, he did not receive a blood test.

Messner moved to suppress the intoxilyzer test results, asserting that he was denied his statutory right to obtain an independent blood test. At the suppression hearing, the transcript of Messner's previous administrative suspension hearing was made the hearing record in lieu of oral testimony.[1] The trial court denied the suppression motion, reasoning:

> In this case it is clear that Officer Olson did nothing to prevent or hinder Mr. Messner's request for an independent examination....
>
> There is evidence, however, that Mr. Messner did request to make a phone call. It is quite possible that this phone call would have been for the purpose of making arrangements for an independent test. The transcript establishes that Officer Olson would not allow Mr. Messner to make a phone call until after the intoxilyzer test was completed. It can be assumed from Mr. Messner's argument that the purpose of the phone call was to talk to an attorney about an independent blood test....
>
> Mr. Messner also argues that he was denied the opportunity for an independent test because he was not allowed to make the phone call until after he was placed in a jail cell. Mr. Messner was allowed to make a phone call. The record does not reflect that Mr. Messner ever made the phone call or what the purpose of the call was for. It can be assumed that Mr. Messner should have used this opportunity to make arrangements for an independent blood test. The outcome in this case would have been different if there was evidence to

show that the law enforcement officers intentionally hindered or delayed Mr. Messner's opportunity for a phone call after the completion of the intoxilyzer test, thereby resulting in an intentional delay in time. In that instance Mr. Messner would not have been allowed to complete an independent test within the time requirement.

> This Court finds that Officer Jerry Olson did not prevent or hinder Mr. Messner's request for an independent examination. Officer Olson had no duty to assist Mr. Messner in obtaining the independent test. The record does not establish that Mr. Messner made any reasonable attempts on his own to obtain an independent examination. A mere request to the arresting officer for an independent test does not establish a reasonable attempt on the defendant's part to secure an independent test. For this reason, the defendant's Motion to Suppress the intoxilyzer test results is denied.

From the agreed record, the trial court found Messner guilty of driving under the influence. Messner appealed.

■ A motorist arrested for driving under the influence has a right to a chemical test in addition to the test taken at the direction of a law enforcement officer.

> The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer with all costs of an additional test or tests to be the sole responsibility of the person charged. The failure or inability to obtain an additional test by a person does not preclude the admission of the test or tests taken at the direction of a law enforcement officer.

---

1. At the administrative hearing, Messner also urged that his right under NDCC 39–20–02 was violated, and that the results of the intoxilyzer test should therefore be suppressed. The hearing officer rejected this contention. Although finding that "Messner wanted a blood test, but somehow he did not get one," the hearing officer determined that "[a]ny failure to obtain his own blood test has no effect on the results of this matter...." Messner appealed his license suspension to the district court. Relying on the North Dakota Court of Appeals decision in *State v. Dressler*, 433 N.W.2d 549 (N.D.Ct.App.1988), the district court reversed the administrative decision, ruling that Messner's right under the statute was violated and that suppression of the intoxilyzer test results was required.

NDCC 39–20–02. We have interpreted this statute on several occasions.

We have held that police have no duty to inform a person of the right to an additional test. *State v. Rambousek,* 358 N.W.2d 223, 230 (N.D.1984). We have also held that a suspect's request for an independent test must be clear and unambiguous. *See State v. Lorenzen,* 401 N.W.2d 508, 509 (N.D.1987); *State v. Solberg,* 381 N.W.2d 197, 198 (N.D.1986). Further, we have said that police may not prevent a suspect from having his own test conducted and that the "right to an additional test is limited necessarily by the availability of testing facilities and other circumstances that may bear on whether an additional testing opportunity is reasonably available." *Boehler v. Backes,* 461 N.W.2d 103, 104 (N.D.1990). Yet this court has not directly addressed the question of what police must do when an independent test is requested by a person in custody.

The North Dakota Court of Appeals has faced the question, however. In *State v. Dressler,* 433 N.W.2d 549 (N.D.Ct.App. 1988), the North Dakota Court of Appeals affirmed the suppression of blood and breath test results administered at a police officer's direction, concluding that the accused was deprived of a reasonable opportunity to exercise his statutory right to an additional test by a person of his choosing. In *Dressler* the accused was arrested late at night in a rural area seven miles north of Richardton. The arresting officer refused the accused's request that a blood test be taken at the hospital in Richardton, falsely informing him that the hospital in Richardton had declined to draw blood samples in the past. The officer transported the accused past the hospital in Richardton and an additional 23 miles to Dickinson where blood and breath tests were administered. In affirming the suppression order, the *Dressler* court declined to set up inflexible guidelines for law enforcement officers to follow when a request for an independent test has been made, and focused, instead, on a standard of reasonableness.

Section 39–20–02, N.D.C.C., need not be rigidly applied, without regard to varying circumstances.... We believe that under § 39–20–02, N.D.C.C., a person arrested for driving under the influence of alcohol must be afforded a reasonable opportunity to secure an additional test by a person of his own choosing if he requests one.... "[T]he meaning of a 'reasonable opportunity' to obtain an examination may vary depending on the circumstances." *Commonwealth v. Alano,* 388 Mass. 871, 448 N.E.2d 1122, 1128 (1983).

Law enforcement officers need not assist people in obtaining independent tests (*Commonwealth v. Alano, supra,*) or even advise them of the right to an additional test [*State v. Rambousek,* 358 N.W.2d 223 (N.D.1984)]. Law enforcement officers, however, "must not prevent or hinder an individual's timely, reasonable attempts to obtain an independent examination." *Commonwealth v. Alano, supra,* 448 N.E.2d at 1128. *See also City of Blaine v. Suess,* 93 Wash.2d 722, 612 P.2d 789 (1980). Law enforcement officers must afford a reasonable opportunity and a motorist's request for an additional test by a person of his own choosing must be a reasonable one. 4 R. Erwin, *Defense of Drunk Driving Cases* § 30.06[3], p. 30–28 (3rd ed. 1988). "What may be reasonable in one locality may be unreasonable in another." *Id.*

\*　　\*　　\*　　\*　　\*　　\*

Under the circumstances presented, in view of the ease with which [the officer] could have complied with [the accused's] request, [the officer's] false and misleading statement that the Richardton hospital refused to draw blood samples for alcohol testing, and the fact that [the officer] would have had ample time for another test in Dickinson if he had complied with [the accused's] request, we conclude that [the accused] was deprived of a reasonable opportunity to exercise his statutory right to an additional test by a person of his choosing.

*Dressler,* 433 N.W.2d at 550–551. For the past three years then, this state's guiding precedent on NDCC 39–20–02 has approved suppression of the police-administered test

when the accused was deprived of a reasonable opportunity to exercise his statutory right to an additional test by a person of his choosing.

■ Statutes similar to NDCC 39–20–02 exist in numerous states and have generated extensive litigation. *See* Annot., *Drunk driving: Motorist's right to private sobriety test*, 45 A.L.R.4th 11 (1986). As the *Dressler* court recognized, it is generally agreed that the statutory right to an independent test is actually an arrested motorist's right to be free of police interference when obtaining another test by his own efforts and at his own expense. *E.g., Gundersen v. Municipality of Anchorage*, 762 P.2d 104, 108 (Alaska Ct.App.1988); *Puett v. State*, 147 Ga.App. 300, 248 S.E.2d 560, 561 (1978). It is commonly stated that there is no statutory right to police assistance in obtaining an independent test. *E.g., Commonwealth v. Alano*, 388 Mass. 871, 448 N.E.2d 1122, 1128 (1983); *Provo City v. Werner*, 810 P.2d 469, 473 (Utah Ct.App.1991). Thus, several courts have said that police are not required to transport an accused to a locale to obtain an independent test, but that they need only allow an accused access to a telephone, and allow medical personnel access to the accused if in custody. *E.g., Bilbrey v. State*, 531 So.2d 27, 29 (Ala.Ct.Crim.App.1987); *Williford v. State*, 284 Ark. 449, 683 S.W.2d 228, 229 (1985); *Commonwealth v. Rosewarne*, 410 Mass. 53, 571 N.E.2d 354, 356 (1991); *State v. Bumgarner*, 97 N.C.App. 567, 389 S.E.2d 425, 428–429 (1990). Nevertheless, these jurisdictions recognize that "[w]hat is reasonable will depend upon the circumstances of each case." *Bilbrey*, 531 So.2d at 29; *see also Alano*, 448 N.E.2d at 1128. A standard of reasonableness applies.

■ Whether the accused has made a reasonable request for an independent test and whether police have interfered by denying the accused a reasonable opportunity to obtain that test depend on the totality of the circumstances. *See Dressler.* We ruled in *Lorenzen* that a trial court's denial of a suppression motion based on an alleged violation of NDCC 39–20–02 will not be reversed if, after conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court's determination.

This record supports the trial court's determinations that Messner made no reasonable attempt to obtain an independent test and that Olson did not deny Messner a reasonable opportunity to obtain that test. After completing the intoxilyzer test, Messner did not renew his request for an independent test. He was promptly placed in a jail cell with access to a telephone that would have allowed him to arrange his own test. There is no evidence that Messner was deprived of use of the telephone, that he was unable to arrange an independent test, or that the police interfered with him doing so. Messner, for some unknown reason, simply did not pursue the matter.

■ As *Dressler* demonstrates, giving an accused access to a telephone may not always, in all circumstances, satisfy the minimal requirements of reasonableness, and police may have a duty to further accommodate an accused's reasonable request for an independent test by a person of his own choosing. *Compare Lockard v. Town of Killen*, 565 So.2d 679, 681 (Ala.Ct. Crim.App.1990); *State v. Buffington*, 189 Ga.App. 800, 377 S.E.2d 548, 550 (1989). But that duty generally does not arise upon an accused's mere request for another test. *Compare Harper v. State*, 164 Ga.App. 230, 296 S.E.2d 782, 783 (1982) ["Before the duty of the police arises to transport a defendant to the location of the test, he must first show that he had made arrangements with a qualified person of his own choosing, that the test would be made if he came to the hospital, that he so informed the personnel at the jail where he was under arrest, and that those holding him then 'either refused or in any event failed to take him to the hospital for that purpose.'"]. Here, Messner has not established denial of a reasonable opportunity to secure an independent test. Rather, this record shows that he failed to take advantage of that opportunity. *See Ehrlich v. Backes*, 477 N.W.2d 211, 214 (N.D.1991).

Messner's right to an independent test under NDCC 39–20–02 was not violated in this case.

We conclude that the trial court did not err in denying the suppression motion. Accordingly, the conviction is affirmed.

ERICKSTAD, C.J., and LEVINE and VANDE WALLE, JJ., concur.

Justice H.F. GIERKE III, a member of the Court when this case was heard, resigned effective November 20, 1991, to accept appointment to the United States Court of Military Appeals and did not participate in this decision.