**CITY OF GRAND FORKS,**
Plaintiff and Appellee,

v.

**Jason Aaron RISSER, Defendant and Appellant.**

Cr. No. 930211.

Supreme Court of North Dakota.

Feb. 23, 1994.

Gary E. Euren, Asst. City Atty., Grand Forks, for plaintiff and appellee.

Neil A. McEwen, Thief River Falls, MN, for defendant and appellant; submitted on briefs.

VANDE WALLE, Chief Justice.

Jason Aaron Risser appealed from a judgment of conviction for driving under the influence of alcohol. We affirm.

Officer James Carroll, Grand Forks Police Department, arrested Risser for driving under the influence of alcoholic beverages at 1:19 a.m. on November 18, 1992. Carroll took Risser to the police station, where Risser submitted to an Intoxilyzer test to determine his blood alcohol content. Carroll then took Risser to the Grand Forks Correctional Center, where he was booked by Correctional Officer Daniel Foster. Risser twice requested a blood test at the police station and again requested a blood test at the correctional center, but none was given.

Risser moved to suppress the Intoxilyzer test result on the ground that he had been deprived of his right to an additional chemical test to determine his blood alcohol content. After a hearing, the county court denied the motion to suppress. A jury found Risser guilty of driving under the influence, and he appealed from the judgment of conviction, contending that the police interfered with his reasonable attempts to obtain a blood test and that the trial court erred in denying his motion to suppress the Intoxilyzer test result.

Section 39–20–01, N.D.C.C., provides for testing to determine the alcoholic content of a motorist's blood:

"Any person who operates a motor vehicle on a highway ... in this state is deemed to have given consent, and shall consent, ..., to a chemical test, or tests, of the blood, breath, saliva, or urine for the purpose of determining the alcoholic ... content of the blood.... The test or tests must be administered at the direction of a law enforcement officer only after placing the person ... under arrest...."

Section 39–20–02, N.D.C.C., provides that a driver may have an additional test at the driver's expense:

"The person tested may have a ... qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer with all costs of an additional test or tests to be the sole responsibility of the person charged. The failure or inability to obtain an additional test by a person does not preclude the admission of the test or tests taken at the direction of a law enforcement officer."

▪ An arresting officer is not required to inform the person tested of the availability of an additional test. *State v. Rambousek,* 358 N.W.2d 223 (N.D.1984). "[A] person arrested for driving under the influence of alcohol must be afforded a reasonable opportunity to secure an additional test by a person of his own choosing if he requests one." *State v. Dressler,* 433 N.W.2d 549, 550 (N.D.Ct.App. 1988). A "request for an independent test must be clear and unambiguous." *State v. Messner,* 481 N.W.2d 236, 239 (N.D.1992). "[T]he statutory right to an independent test is actually an arrested motorist's right to be free of police interference when obtaining another test by his own efforts and at his own expense." *Id.* at 240. "The results of chemical tests administered at the direction of law enforcement officers may be suppressed, or charges dismissed, when a motorist is not afforded his statutory right to an independent test." *Dressler, supra,* 433 N.W.2d at 551. "Whether the accused has made a reasonable request for an independent test and whether police have interfered by denying the accused a reasonable opportunity to obtain that test depend on the totality of the circumstances." *Messner, supra,* 481 N.W.2d at 240. "We will reverse a trial court's disposition of a motion to suppress only if there is, after resolving conflicts in favor of affirmance, insufficient competent evidence fairly capable of supporting the trial court's determination." *State v. Kettleson,* 486 N.W.2d 227, 228 (N.D.1992).

▪ As we have already observed, a driver's "request for an independent test must be clear and unambiguous." *Messner,* 481 N.W.2d at 239. To be unambiguous, a request need not exclude all possible alternative interpretations that a police officer

might put on the request. An officer who deems a request to be ambiguous should attempt to clarify the matter with the driver.

■ Risser twice requested a blood test at the police station. Risser did not refuse to take an Intoxilyzer test. Carroll testified that Risser "seemed to prefer a blood test over an intoxilyzer test," that Risser did not "specifically request an independent test," and that "I believe that what he wanted was a blood test as opposed to an intoxilyzer test." In denying Risser's motion to suppress, the county court determined that it was "unable to find that the defendant was even making a request for an independent test while at the police station." We might not have made the same finding had we been ruling on the motion initially. However, the trial court's "finding is not contrary to the manifest weight of the evidence and thus is entitled to our deference." *State v. Pickar*, 453 N.W.2d 783, 787 (N.D.1990).

The court found that Risser did make a reasonable request for an independent test at the correctional center. Officer Carroll testified that Risser said he wanted a blood test and "I indicated that once the check-in procedure was done that, you know, he would have an opportunity to make a telephone call or make whatever arrangements he wanted to for a blood test." Officer Foster testified that while he was processing Risser into the correctional center, Risser requested a blood test, and that he told Risser that "we'll get through the booking procedure and then he'll be able to make a phone call to arrange some sort of test." Foster further testified that, in response to a request for an independent blood test by Risser, "I told him once we got him booked, he would have a chance to make phone calls and arrange for a test of blood." This evidence supports the court's finding that Risser made a reasonable request for an independent test, and also shows that Risser was advised that he would be able to use a telephone, after the booking procedure was finished, to make arrangements for a blood test.

Risser was told that he could use a telephone to make arrangements for an independent test. After he was booked at the correctional facility, Risser was afforded access to a telephone. Risser made some telephone calls, but none of them were to a medical facility to arrange for a blood test. This supports the trial court's determination that it was "unable to find that the law enforcement officers did anything to prevent or hinder the defendant's request for a blood test." Here, as in *State v. Messner, supra*, 481 N.W.2d at 240, Risser "has not established denial of a reasonable opportunity to secure an independent test. Rather, this record shows that he failed to take advantage of that opportunity."

■ Risser objected to the admission of a telephone log showing that he had made telephone calls, the time when they were made, and the persons to whom the calls were made. Risser argued that the telephone log was irrelevant, and further argued:

"I note in this document, your Honor, that the first call was at 3:58. The arrest was made at 1:19. Any test that would have been taken at 3:58 had no relevance in this proceeding, as the Court is aware, and so I'd like the record to reflect that."

The court overruled the objection. In denying the motion to suppress the Intoxilyzer test result, the court ruled that the argument was "without merit, though, because the two-hour limitation for administration of the test is a burden placed upon the prosecution, not the defense. *See* N.D.C.C. § 39–08–01(1)(a)." We agree. We have never held nor even suggested that the statutory right to a second test requires that the test must be available within two hours of the time of the arrest.

Section 39–08–01(1), N.D.C.C., provides in part:

"1. A person may not drive or be in actual physical control of any vehicle ... if any of the following apply:

"a. That person has an alcohol concentration of at least ten one-hundredths of one percent by weight at the time of the performance of a chemical test *within two hours after the driving or being in actual physical control of a vehicle.*

"b. That person is under the influence of intoxicating liquor." [Emphasis added.]

The two-hour provision in § 39–08–01(1)(a) is a restriction on the prosecution of the per se offense in 39–08–01(1)(a), but does not affect prosecution under § 39–08–01(1)(b) for driving while under the influence of intoxicating liquor. In *State v. Kimball,* 361 N.W.2d 601, 603 (N.D.1985), we held that "if a chemical test was not performed within two hours of Kimball's driving he could not be convicted of violating § 39–08–01(1)(a)" but that the chemical test result "was admissible to prove his violation of § 39–08–01(1)(b) as relevant evidence pursuant to § 39–20–07(2). It is therefore of no import that the State cannot establish the test was performed within two hours of Kimball's driving." *See also City of Grand Forks v. Soli,* 479 N.W.2d 872 (N.D. 1992); *State v. Pitman,* 427 N.W.2d 337 (N.D.1988); *City of Bismarck v. Preston,* 374 N.W.2d 602 (N.D.1985); *State v. Allery,* 371 N.W.2d 133 (N.D.1985); *State v. Vetsch,* 368 N.W.2d 547 (N.D.1985).

*Pitman, supra,* and *Soli, supra,* are especially significant with regard to the relevance of a chemical test performed more than two hours after the defendant drove or was in control of a vehicle. We said in *Pitman,* 427 N.W.2d at 342: "Thus, the results of an intoxilyzer test, regardless of when it was given, would be probative of the question of whether or not Pitman was under the influence of alcohol." In *Soli,* 479 N.W.2d at 875, we said:

> "The two-hour limit of § 39–08–01(1)(a), N.D.C.C., has nothing to do with admissibility of chemical test results. Admissibility of chemical test results is governed by § 39–20–07, N.D.C.C., which does not condition admissibility of a chemical test result upon the test's performance within two hours of an arrested person's driving of a motor vehicle.... Thus, evidence of the result of a blood test taken more than two hours after driving is not inadmissible. It is insufficient evidence upon which to convict a defendant charged with violating § 39–08–01(1)(a), N.D.C.C. It may be sufficient evidence for the trier of fact to convict a defendant for violating § 39–08–01(1)(b), (c) or (d), N.D.C.C."

Although the length of time between the arrest and the second test is important for purposes of the weight given the test, the time elapsed here between the arrest and Risser's first call, some two hours and 39 minutes, would not appear significant.

We conclude from our review of the record that the trial court made no errors of law and that there was sufficient competent evidence to support the court's denial of Risser's motion to suppress the Intoxilyzer test result.

Affirmed.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.