Paul Henry LOCK, Petitioner and Appellee,

v.

Marshall MOORE, Director, North Dakota Department of Transportation, Respondent and Appellant.

Civ. No. 950193.

Supreme Court of North Dakota.

Dec. 29, 1995.

Monte L. Rogneby, Assistant Attorney General, Bismarck, for respondent and appellant.

Thomas Schoppert of Schoppert Law Firm, Minot, for petitioner and appellee.

NEUMANN, Justice.

The North Dakota Department of Transportation (Department) appeals from a Mountrail County District Court judgment reversing the Department's administrative decision suspending Paul Henry Lock's driving privileges for ninety-one days for driving under the influence. We reverse the district court's judgment and reinstate the Department's decision.

The Department argues on appeal the district court was wrong when it agreed with Lock's two arguments: (1) as a DUI arrestee, he was illegally detained by the New Town Police Department under a city policy operating in effect as a mandatory minimum period of detention for detoxification, and (2) he was denied his right to an independent blood test. The Department contends the district court's judgment should be reversed and the Department's suspension decision reinstated. We agree. The district court's decision concerning Lock's first argument exceeded the standard for reviewing administrative license suspensions. Regarding Lock's second argument, the district court's decision is not supported in the law.

New Town police officer Sam Lincoln arrested Lock shortly after midnight on December 31, 1994, for driving under the influence. Lock, a stranger to New Town, was taken to the New Town Police Department where he was given an Intoxilyzer test. Lock requested an independent blood test, and Officer Lincoln informed him he would have to pay for and make arrangements for such a test. Lock "thought" he had enough money to pay for an independent blood test, and he made two telephone calls, one to his wife in Minot, and another to a friend in New Town. Lock did not make arrangements for an independent test, but he also did not ask for further information from Officer Lincoln regarding arrangements. Officer Lincoln did not volunteer his knowledge that in the past a local doctor had come to the jail and performed independent tests. He also did not deny Lock further use of the telephone or otherwise impede Lock's efforts to arrange an independent test. Lock claimed he made a second request for an independent test, but Officer Lincoln did not recall the request.

Lock was given the opportunity to post bail of $350 cash. Officer Lincoln indicated Lock did not post bail. He did not recall if Lock had the required bail on his person. Other than asking Officer Lincoln whether he could bail out of jail, Lock made no further effort to post bail.

In addition to the bail requirement, New Town's city policy required that a responsible person assume liability for intoxicated persons before they could leave jail. Lock did not meet this requirement either. He was released from jail around 9:30 a.m. on December 31, 1994.

Lock subsequently received notice of the Department's intent to suspend his driving privileges. Upon timely request, an administrative hearing was held on January 25, 1995. At the conclusion of the hearing, the hearing officer issued findings of fact, conclusions of law, and a decision. The hearing officer found Lock was not able to post bail, and suspended Lock's license for ninety-one days.

Lock appealed the decision to the Mountrail County District Court. The district court reversed the hearing officer's decision. The Court implicitly found Lock had the bail

money and was denied being let out of jail, and concluded Lock was illegally detained. Responding to Lock's second argument, the court concluded Lock was denied his right to an independent blood test because Officer Lincoln unreasonably withheld information from Lock concerning possible arrangements for the test. The Department appeals the decision.

■■ The Administrative Agencies Practice Act governs appeals from district court judgments involving administrative license suspensions. *Samdahl v. N.D. Dept. of Transp. Director*, 518 N.W.2d 714, 716 (N.D. 1994). When reviewing drivers' license suspensions, we are confined to the record before the agency. *Id.* We do not review the decision of the district court. *Id.*

> "We must affirm the [Department's] decision: (1) if the findings of fact are supported by a preponderance of the evidence; (2) if the conclusions of law are sustained by the findings of fact; (3) if the decision is supported by the conclusions of law; and (4) if the decision is in accordance with law."

*Id.* (citing *Sabinash v. Director of Dept. of Transp.*, 509 N.W.2d 61, 63 (N.D.1993)). When reviewing the findings of the Department, "we do not make independent findings of fact or substitute our judgment for that of the [Department], but determine only whether a reasoning mind could reasonably have determined that the facts or conclusions were supported by the weight of the evidence." *Maher v. N.D. Dept. of Transp.*, 510 N.W.2d 601, 603 (N.D.1994) (citing *Evans v. Backes*, 437 N.W.2d 848, 849 (N.D.1989)).

■■ The district court exceeded the standard of review when it substituted its own implicit factual finding for one made by the Department's hearing officer. The court apparently agreed with Lock's factual characterization that he "had the bail money, and was denied being let out of jail." Citing *City of Fargo v. Stutlien*, 505 N.W.2d 738 (N.D. 1993), the court determined Lock was illegally detained because New Town's city policy requiring a responsible person assume liability for an intoxicated person was in effect a mandatory minimum period of detention for

detoxification in violation of a person's constitutional right to bail. Thus, the district court determined, even though Lock had met the bail requirement, he was denied release from jail because he could not meet New Town's responsible-person policy.

■ However, the district court's finding concerning bail is not supported by the evidence. The evidence before the hearing officer concerning bail consisted of Officer Lincoln's testimony that Lock did not post bail, and that he did not recall if Lock had the required bail on his person. Lock testified he asked Officer Lincoln whether he could bail out of jail, but he made no further effort to post bail. Other than indicating he "thought" he had enough money to pay for an independent blood test, Lock neither offered testimony nor presented evidence at the hearing about whether he had the bail amount. This evidence supports the hearing officer's factual finding that Lock was not able to post bail. We conclude a reasoning mind could reasonably have made this finding. The hearing officer's finding, and not the district court's, is supported by the weight of the evidence.

The hearing officer's finding that Lock was not able to post bail distinguishes this case from *City of Fargo v. Stutlien* and more recently *City of Jamestown v. Erdelt*, 513 N.W.2d 82 (N.D.1994), cases in which the defendants did post bail. Unlike those cases, this is not a case of a person meeting all the bail requirements but nonetheless being kept in jail. *Erdelt*, 513 N.W.2d at 84; *Stutlien*, 505 N.W.2d at 741–43. Because the finding concerning bail was preliminary to and dispositive of Lock's illegal detention argument, the district court prematurely addressed the argument.

■ Lock next argued to the district court that he was denied his right to an independent blood test. Agreeing with Lock and citing *State v. Dressler*, 433 N.W.2d 549 (N.D.App.1988), and *State v. Messner*, 481 N.W.2d 236 (N.D.1992), the district court, stating Officer Lincoln unreasonably with-

held information from Lock concerning possible arrangements for an independent test, in effect determined Officer Lincoln had an affirmative duty to assist Lock in getting an independent test even though Lock did not ask Officer Lincoln for assistance. As authority for imposing an affirmative duty, the district court, quoting *Messner*, stated: "giving an accused access to a telephone may not always, in all circumstances, satisfy the minimal requirements of reasonableness, and police may have a duty to further accommodate an accused's reasonable request for an independent test." 481 N.W.2d at 240. The quotation, however, is taken out of context; it must be read in light of the entire *Messner* opinion.

In *State v. Messner*, this court approved an earlier ruling by the North Dakota Court of Appeals in *State v. Dressler*. At issue in both cases was "the question of what police must do when an independent test is requested by a person" arrested for DUI. *Messner*, 481 N.W.2d at 239; *Dressler*, 433 N.W.2d at 550. Both cases responded with, when confronted with a request for an independent test by a DUI arrestee, police officers must afford that arrestee a reasonable opportunity to secure an independent test. *Messner*, 481 N.W.2d at 239–40; *Dressler*, 433 N.W.2d at 550.

While "the meaning of a 'reasonable opportunity' . . . may vary depending on the circumstances," *Messner*, 481 N.W.2d at 239, (citing *Dressler*, 433 N.W.2d at 550), it does include police officers not preventing or hindering a DUI arrestee's "timely, reasonable attempts to obtain an independent [test]." It does not include police officers advising DUI arrestees of their right to an independent test or assisting them in obtaining the test. *Id.*

■ Like the defendant in *Messner*, Lock failed to establish that he was denied a reasonable opportunity to secure an independent test. After requesting an independent blood test,[1] Lock was told by Officer Lincoln that he would have to pay for and make arrangements for the test. With unlimited access to

---

1. Lock claimed he made a second request for an independent test, but Officer Lincoln did not recall the request. The hearing officer found

Lock's testimony on the matter not credible. The evidence supports that finding.

the telephone Lock made only two telephone calls, one to his wife and another to a friend, the purposes of which were uncertain. Lock did not make arrangements for a test. He could and should have used the opportunity to make arrangements. *Messner,* 481 N.W.2d at 238, 240 (finding defendant "made no reasonable attempt to obtain an independent test"). Furthermore, despite the circumstances of being a stranger in a rural town involved in a late-night arrest, Lock failed to pursue his opportunity when he did not even ask Officer Lincoln for further information regarding arrangements. *See id.* at 240 (recognizing that, in some circumstances, providing access to a telephone may not satisfy the standard of reasonableness, and "police may have a duty to further accommodate [a] reasonable request for an independent test"). Finally, Officer Lincoln did not volunteer his knowledge to Lock about the local doctor's practice, but neither *Dressler* nor *Messner* required him to do so. A police officer is not required to advise a DUI arrestee of the right to an independent test or to assist that arrestee in obtaining the test. *Dressler,* 433 N.W.2d at 551; *Messner,* 481 N.W.2d at 239. It follows that a police officer is not required to advise a DUI arres-

tee on how to obtain an independent test, particularly in the absence of a request for such information. The district court's decision requiring otherwise is not supported in the law.

Officer Lincoln afforded Lock a reasonable opportunity to obtain an independent blood test, but Lock made no reasonable effort on his own to obtain the test. Officer Lincoln did not prevent, hinder, or otherwise interfere with Lock's efforts. Lock simply failed to take full advantage of his opportunity. He was not denied his right to an independent test.

The district court judgment is reversed, and the Department's decision is reinstated.

VANDE WALLE, C.J., and SANDSTROM, MESCHKE and LEVINE, JJ., concur.