Lonnie **CHADWICK**, Petitioner and Appellee,

v.

Marshall **MOORE**, Director, North Dakota Department of Transportation, Respondent and Appellant.

Civil No. 960059.

Supreme Court of North Dakota.

July 18, 1996.

Monte L. Rogneby, Assistant Attorney General, Bismarck, for respondent and appellant.

Ralph A. Vinje, Bismarck, for petitioner and appellee.

NEUMANN, Justice.

The North Dakota Department of Transportation (Department) appeals a district court judgment reversing the Department's administrative decision to revoke Lonnie Chadwick's driving privileges for two years for refusing to submit to an alcohol concentration test. We reverse the district court's judgment and reinstate the Department's decision.

On September 10, 1995, shortly after 1:00 a.m., Mandan Police Officer Brent Wilmeth responded to a fight on the west side of and across the street from the Silver Dollar Bar in Mandan. Upon arriving, he noticed Mandan Police Sergeant Stromstodt was talking to one of the fight participants, Lonnie Chadwick. Officer Wilmeth further observed Chadwick was belligerent toward and agitated with Sergeant Stromstodt. Stromstodt encouraged Chadwick to leave the scene, but Chadwick, while yelling at and making serious threats to another person, responded to Stromstodt's urging with profane language.

As Chadwick began walking toward his motorcycle, Officer Wilmeth asked him if he had his driver's license. Chadwick answered, "fuck you, rotten motherfucker." Officer Wilmeth then ran a license check and learned Chadwick had a car license, but not a motorcycle license. Officer Wilmeth asked Chadwick if he had a motorcycle license. Chadwick answered, "no." Chadwick then took off on his motorcyle at an excessive speed, "revving his engine and screaming through the gears." Because Chadwick did not have a motorcycle license, Officer Wilmeth followed him in his patrol car with the overhead lights activated.

Several blocks later, Chadwick pulled over. Officer Wilmeth requested his driver's license. Chadwick responded, "fuck you ... the state has my driver's license, you dumb motherfucker." Officer Wilmeth then requested Chadwick's motorcycle license. Again, Chadwick responded profanely and pounded his hand while yelling at Officer Wilmeth, "fuck you, write the fucking ticket ... just write the fucking ticket." During this encounter, Officer Wilmeth smelled a strong odor of alcohol. He asked Chadwick if he had been drinking, and Chadwick continued to scream profanely and also threatened to physically assault Officer Wilmeth. In the meantime, Sergeant Stromstodt had arrived at the scene.

Officer Wilmeth asked Chadwick, several times, if he would remove himself from his motorcycle. Chadwick refused. Officer Wilmeth and Sergeant Stromstodt removed Chadwick from his motorcycle and placed him against the hood of a patrol car. Both officers asked Chadwick if he would perform field sobriety tests. Chadwick's response to

both was "fuck you." Concluding Chadwick was intoxicated, Officer Wilmeth arrested him for driving under the influence (DUI).

The officers placed Chadwick in Officer Wilmeth's patrol car, where Officer Wilmeth read Chadwick *Miranda* warnings and the implied consent advisory. He also asked Chadwick twice if he would take a blood test. Chadwick answered, "fuck you," and "let me go or I'll kill you, fucker." Officer Wilmeth transported Chadwick to the police station and again asked if he would submit to a blood test, but was met with the same profane response. From his jail cell, Chadwick continued to threaten Officer Wilmeth as well as other staff at the police station.

After receiving notice that his driving privileges would be revoked, Chadwick timely requested an administrative hearing, which was held October 6, 1995. At the conclusion of the hearing, the hearing officer issued findings of fact, conclusions of law, and a decision revoking Chadwick's driving privileges for two years because Chadwick had refused to take an alcohol concentration test.

Chadwick appealed the hearing officer's decision to the district court, arguing Officer Wilmeth did not have probable cause to arrest him for DUI. The district court agreed and reversed the decision. The Department appeals.

The Department argues the following factors support Officer Wilmeth's determination of probable cause to arrest Chadwick for DUI: Chadwick's strong odor of alcohol, erratic driving, belligerent behavior, and refusal to submit to field sobriety tests. Chadwick claims there was no evidence before the hearing officer showing that his driving was erratic, or that the odor of alcohol came from him. He also contends a refusal to submit to field sobriety tests is not a proper factor for law enforcement to consider in determining whether they have probable cause to arrest a person for DUI. Chadwick concedes his belligerent behavior, but argues that factor alone is insufficient to support probable cause for his DUI arrest.

■ We initially note this court's standard for reviewing appeals from a district court judgment involving a decision by the Department to revoke driving privileges. *Lock v. Moore,* 541 N.W.2d 84, 86 (N.D.1995). This court does not review the decision of the district court. *Id.* Instead, we review the record before the Department, and determine:

"(1) if the findings of fact are supported by a preponderance of the evidence; (2) if the conclusions of law are sustained by the findings of fact; (3) if the decision is supported by the conclusions of law; and (4) if the decision is in accordance with law."

*Id.* (citing *Samdahl v. N.D. Dept. of Transp. Director,* 518 N.W.2d 714, 716 (N.D.1994)). When reviewing the findings of the Department, "we do not make independent findings of fact or substitute our judgment for that of the Department, but determine only whether a reasoning mind could reasonably have determined that the facts or conclusions were supported by the weight of the evidence." *Id.* (citing *Maher v. N.D. Dept. of Transp.,* 510 N.W.2d 601, 603 (N.D.1994)).

The hearing officer found Chadwick was involved in a fight near the Silver Dollar Bar and "was very belligerent and made serious threats and abusive language." The hearing officer further found Chadwick did not have a motorcycle license, "took his motorcycle and accelerated at a high rate of speed and left the scene [operating] his motorcycle in an erratic manner[,]" and, after being stopped by Officer Wilmeth, "had the odor of alcohol [and] again used foul and abusive language."

■ Chadwick argues the evidence did not support a finding his driving was erratic, and instead, claims the finding was "purely an invention of the hearing officer." The hearing transcript indicates Officer Wilmeth did not testify Chadwick's driving was erratic. Rather, he testified Chadwick took off on his motorcycle at an excessive speed, "revving his engine and screaming through the gears." We agree Chadwick's driving was not "erratic" in the sense of veering, or jerking and weaving movements, *Moran v. N.D. Dept. of Transp.,* 543 N.W.2d 767, 770 (N.D.1996), or weaving and crossing lanes of traffic. *Mayo v. Moore,* 527 N.W.2d 257, 259 (N.D.1995); Webster's Third New Int'l Dictionary 772 (1971) (defining erratic as "having no fixed

course ... wandering"). But "erratic" also includes behavior that "deviat[es] from what is ordinary or standard." Webster's, at 772. Leaving the presence of an officer in the aggressive manner that Chadwick did—accelerating at a high rate of speed, revving his engine, and screaming through the gears—probably does not constitute ordinary behavior. Under this latter understanding of "erratic," we conclude the evidence supports the hearing officer's finding.

▮ Chadwick also argues the evidence did not support the hearing officer's finding that he had an odor of alcohol. He claims "[t]he testimony is by no means clear that the odor of alcohol referred to by the officer emanated from" him. Though Officer Wilmeth did not testify the odor of alcohol he smelled came from Chadwick, he did testify, after stopping Chadwick, and while standing next to Chadwick, who was on his motorcycle, he could "smell [a] strong odor of alcoholic beverage." A reasonable inference from this testimony is that the odor of alcohol came from Chadwick. *See State v. Pitman,* 427 N.W.2d 337, 339 (N.D.1988) (officer detecting odor of alcohol from DUI suspect while in patrol car); *cf. Mayo,* 527 N.W.2d at 258 (officer testifying "he could smell a strong odor of alcohol on [DUI suspect's] breath"). We conclude the evidence supports the hearing officer's finding that Chadwick had an odor of alcohol. We further conclude a reasoning mind could reasonably determine that the weight of the evidence supports the hearing officer's other findings.

▮ We next determine whether the Department's findings of fact support its conclusion that Officer Wilmeth had probable cause to arrest Chadwick. The hearing officer concluded "[a]rticulable and reasonable grounds existed to stop Mr. Chadwick and to believe he had been driving while under the influence of intoxicating liquor." The district court concluded there was "insufficient evidence on which to base reasonable suspicion to arrest [Chadwick] for driving under the influence." We disagree with the district court in that "exhibit[ing] a strong odor of an alcoholic beverage and act[ing] in a belligerent, threatening, and abusive manner" consti-

tutes probable cause to arrest Chadwick for DUI.

▮ " 'Reasonable grounds' is equivalent to probable cause." *Moran,* 543 N.W.2d at 769. Probable cause is a question of law, fully reviewable on appeal. *Id.* We, therefore, do not defer to the hearing officer's conclusion on probable cause. *Id.*

▮ Probable cause to arrest exists when the " 'facts and circumstances within a police officer's knowledge and of which he had reasonable trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed.' " *Moran,* 543 N.W.2d at 770 (citing *State v. Prigge,* 437 N.W.2d 520, 521 (N.D.1989)). The officer does not need knowledge or facts sufficient to establish guilt. *Id.* To arrest a driver for driving under the influence, two elements are necessary to establish probable cause: (1) "the law enforcement officer first must observe some signs of impairment, physical or mental[,]" *id.,* and (2) "the law enforcement officer must have reason to believe the driver's impairment is caused by alcohol." *Id.*

▮ The hearing officer found Chadwick did not have a motorcycle license, and further found when Chadwick left the scene of a fight he had been involved in, he accelerated his motorcycle at a high rate of speed, operating it in an erratic manner. "We will defer to the hearing officer's findings of fact ... because we have found them to be supported by a preponderance of the evidence." *Moran,* 543 N.W.2d at 769. Driving a vehicle without a license is not lawful. N.D.C.C. § 39–06–01. A violation of law and erratic driving are relevant factors for a police officer to consider in determining probable cause. *Moran,* 543 N.W.2d at 770. The hearing officer also found Chadwick had an odor of alcohol. This, too, is a relevant factor in determining probable cause. *Id.* Finally, we think it beyond dispute that Chadwick was impaired and that this impairment was caused by alcohol. Chadwick had been in the vicinity of a bar, had been involved in an early morning hour fight, and had an odor of alcohol. He responded repeatedly to Officer Wilmeth with egregiously profane lan-

guage and hostile, pugnacious behavior. We cannot say it was unreasonable for Officer Wilmeth to believe Chadwick did not "possess the clearness of intellect and control of himself that he would otherwise have." *See State v. Miller*, 530 N.W.2d 652, 655 (N.D. 1995); *see also State v. Engebretson*, 326 N.W.2d 212, 215 (N.D.1982) (stating defendant need not be in "totally stuporous condition" to sustain DUI conviction); *State v. Hendrickson*, 240 N.W.2d 846, 850 (N.D. 1976) (discussing effects of alcohol consumption). We therefore conclude Officer Wilmeth had probable cause to arrest Chadwick for DUI. We further conclude this probable cause existed before Officer Wilmeth asked Chadwick to perform field sobriety tests. Given this conclusion, we need not decide whether Chadwick's refusal to perform the tests was a proper factor for Officer Wilmeth to consider in determining probable cause. *Mayo*, 527 N.W.2d at 259.

A preponderance of the evidence supports the hearing officer's findings of fact. The hearing officer's conclusions of law are supported by the findings of fact. Therefore, because Officer Wilmeth had probable cause to arrest Chadwick, we affirm the hearing officer's decision.

The district court's judgment is reversed and the Department's decision is reinstated.

VANDE WALLE, C.J., and MARING, MESCHKE and SANDSTROM, JJ., concur.