Filed 3/22/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 61

State of North Dakota, Plaintiff and Appellee

v.

Randy Edward Tompkins, Defendant and Appellant

No. 20100234

Appeal from the District Court of Stutsman County, Southeast Judicial District, the Honorable John T. Paulson, Judge.

AFFIRMED.

Opinion of the Court by Sandstrom, Justice.

Frederick R. Fremgen, State’s Attorney, 511 Second Avenue SE, Jamestown, N.D. 58401, for plaintiff and appellee.

Chad R. McCabe, 402 East Main Avenue, Suite 100, Bismarck, N.D. 58501, for defendant and appellant.

State v. Tompkins

No. 20100234

 

Sandstrom, Justice.

[¶1] Randy Tompkins appeals from the district court’s judgment entered after he conditionally pled guilty to driving under the influence, reserving the right to appeal the court’s order denying his motion to suppress evidence.  We affirm the criminal judgment, concluding the State did not impermissibly interfere with the independent blood test that he requested and received.

 

I

[¶2] Tompkins was arrested and charged with driving under the influence in October 2009.  On the day Tompkins’ jury trial was set to begin, he argued to the district court that the results of both the State-administered breath test and his independent blood test should be suppressed.  The court agreed the blood test should be suppressed, but refused to exclude the results of the breath test.  Tompkins conditionally pled guilty to driving under the influence.  Testimony was then taken from Tompkins and other witnesses to develop the record for appeal.

[¶3] According to Tompkins, he was stopped by a North Dakota Highway Patrol officer for an alleged problem with his muffler.  The officer conducted various field sobriety tests during the course of the stop.  Following these tests, Tompkins was placed under arrest and taken to the Jamestown law enforcement center, where a breath test was administered.  The test reflected Tompkins’ blood-alcohol content exceeded the legal limit.

[¶4] While at the law enforcement center, Tompkins requested a blood test.  The officer testified he explained to Tompkins that one could be obtained at his own expense, but would be in addition to a breath test.  The officer also testified he drove Tompkins to the Jamestown Hospital and called while en route to inform the hospital staff that he was bringing an individual in for an independent blood test.  He remained present with Tompkins while the blood draw occurred.

[¶5] The nurse who performed the blood draw used the State Crime Lab kit, which she testified is used at the Jamestown Hospital for all tests that may be introduced in court.  The blood sample was sent to the State Crime Lab for analysis, which the nurse stated was routine procedure for all tests drawn for legal, rather than personal medical, purposes.  The blood submission form noted that Tompkins had been arrested by “NDHP” and that the test was requested by the patient.  The blood sample was analyzed by the State Crime Lab, and the results were returned to the Jamestown Hospital.  The Stutsman County State’s Attorney’s Office also requested and received a copy of the test results from the State Crime Lab.

[¶6] Tompkins argued at the district court that the State impermissibly interfered with his right to an independent blood test.  First, he alleged the officer did not sufficiently explain to him that he had the right to choose his clinic and physician.  Second, Tompkins contended the officer interfered with the test by not intervening when the nurse used the State Crime Lab kit to perform the blood draw.  Third, he argued the involvement of the State Crime Lab and the mailing of the results to the State’s Attorney’s Office constituted improper State interference.  On the basis of these alleged violations, Tompkins contended the blood test results should be suppressed along with the results of the State-administered breath test.  The district court partially agreed, stating in its written order that “there was too much government involvement in the Defendant’s efforts to obtain an independent blood test and . . . the Defendant was denied his right and opportunity to obtain an independent blood test . . . .”  The court granted Tompkins’ motion to suppress the blood test results, but denied his motion to suppress the breath test results.  He subsequently entered his conditional guilty plea, reserving the right to appeal the denial of his motion to suppress.

[¶7] On appeal, Tompkins argues excessive State involvement denied him his right to obtain an independent blood test and therefore this test should be suppressed along with the breath test administered by the State.

[¶8] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27-05-06.  Tompkins’ appeal is timely under N.D.R.App.P. 4(b).  This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 29-28-06.

 

II

[¶9] Tompkins argues the district court erred in denying his motion to suppress the results of his breath test, because excessive State involvement denied him his right to obtain an independent blood-alcohol test under N.D.C.C. § 39-20-02.  “[S]uppression of the results of a blood [alcohol] test given by law enforcement officials is an appropriate remedy for the denial of a reasonable opportunity to obtain an additional, independent blood-alcohol test; and dismissal of the criminal charges may also be warranted.”  
City of Fargo v. Stutlien
, 505 N.W.2d 738, 745 (N.D. 1993).

[¶10] When reviewing a ruling on a motion to suppress evidence, we defer to the district court’s findings of fact and resolve conflicts in testimony in favor of affirmance.  
City of Grand Forks v. Zejdlik
, 551 N.W.2d 772, 774 (N.D. 1996).  The district court’s findings of fact “will not be reversed if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the trial court’s findings, and the decision is not contrary to the manifest weight of the evidence.”  
City of Fargo v. Thompson
, 520 N.W.2d 578, 581 (N.D. 1994).  “Questions of law are fully reviewable.”  
State v. Gregg
, 2000 ND 154, ¶ 20, 615 N.W.2d 515.

A

[¶11] The first part of Tompkins’ argument centers on the actions of the arresting officer.  Tompkins contends the officer interfered with his right to obtain an independent blood test by not informing him that he had a right to choose his clinic and nurse.  He also argues the officer infringed on his right to an independent test by remaining present for the blood draw and not stopping the nurse from using the State Crime Lab kit.

[¶12] An arresting officer has no duty to assist the accused in obtaining an independent blood-alcohol test under N.D.C.C. § 39-20-02.  
Lock v. Moore
, 541 N.W.2d 84, 88 (N.D. 1995).  If the accused makes a reasonable request for an independent test, however, law enforcement must not interfere to the extent a reasonable opportunity to obtain the test is denied.  
City of Fargo v. Bakkerud
, 1998 ND 77, ¶ 6, 576 N.W.2d 858.  Whether interference by law enforcement has denied the accused a reasonable opportunity to obtain the test depends on the totality of the circumstances.  
Id.
  “While the meaning of a ‘reasonable opportunity’ . . . may vary depending on the circumstances, it does include police officers not preventing or hindering a DUI arrestee’s timely, reasonable attempts to obtain an independent test.”  
Moore
, at 87 (quotations omitted).

[¶13] Tompkins’ argument places upon law enforcement an affirmative duty to ensure the accused receives his independent blood test.  This argument mischaracterizes the duty of the arresting officer.  The previously cited cases reflect that the officer’s responsibility is not to actively assist the accused, but rather to refrain from acting in such a way that the accused is denied a reasonable opportunity to obtain an independent blood-alcohol test.  While the circumstances of each individual case must be scrutinized, we have held the minimal act of providing access to a telephone following a request for an independent blood-alcohol test is a reasonable accommodation by law enforcement.  
See, e.g.
, 
State v. Messner
, 481 N.W.2d 236 (N.D. 1992); 
Bakkerud
, 1998 ND 77, 576 N.W.2d 858; 
Moore
, 541 N.W.2d 84 (N.D. 1995).

[¶14] The arresting officer’s actions in this case went far beyond merely providing Tompkins with access to a telephone.  He personally drove Tompkins to the Jamestown Hospital and called ahead to inform the hospital staff that he was bringing in an individual for an independent blood test.  The accused must arrange all aspects of the independent test.  
See
 
Moore
, 541 N.W.2d at 88.  The officer did not infringe on Tompkins’ rights by not informing him of the right to choose his own medical facility and medical professional.  If anything, the officer’s actions benefitted Tompkins by taking care of these arrangements for him.  It was solely Tompkins’ responsibility to object and seek different arrangements if he did not agree with the officer’s choice.

[¶15] Further, the officer was under no duty to intervene at any point during the actual blood draw.  The law requires only that law enforcement not interfere with the accused’s opportunity to secure an independent test.  
Bakkerud
, 1998 ND 77, ¶ 6, 576 N.W.2d 858.  The law did not require the officer to intervene during the blood draw.  The record reflects that the arresting officer’s actions went beyond what the law required of him and did not hinder Tompkins from receiving the independent blood test he requested.

B

[¶16] The second part of Tompkins’ argument concerns the involvement of the State Crime Lab with his blood test.  Specifically, Tompkins contends the State impermissibly interfered with his right to obtain an independent blood test because the blood sample was sent to the State Crime Lab for testing and because the State’s Attorney’s Office received a copy of the sample.

[¶17] The statute that affords an accused the right to an independent blood-alcohol test is N.D.C.C. § 39-20-02.  This statute reads in part:

The person tested may have an individual of the person’s choosing, who is medically qualified to draw blood, administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer with all costs of an additional test or tests to be the sole responsibility of the person charged.  The failure or inability to obtain an additional test by a person does not preclude the admission of the test or tests taken at the direction of a law enforcement officer.

Id.
  When a statute is unambiguous, we may not disregard the letter of the law under the pretext of pursuing its spirit.  N.D.C.C. § 1-02-05.  Accordingly, Tompkins is afforded only those rights specifically enumerated under N.D.C.C. § 39-20-02, a statute which he has not argued is ambiguous.

[¶18] Under N.D.C.C. § 39-20-02, a person accused of driving under the influence is afforded two specific rights regarding an independent blood-alcohol test:  (1) the right to have such a test performed, and (2) the right to choose who administers this test.  Our holdings in 
Moore
 and 
Bakkerud
 illustrate that it is the accused’s duty to exercise these rights.  In this case, Tompkins exercised his right to an independent test by properly making the request.  He did not specify a clinic or professional of his choosing to administer the test, however, and therefore he forfeited this right.  Besides the collateral right to the test results and the obligation to pay for all costs associated with the test, Tompkins was afforded no further rights under N.D.C.C. § 39-20-02.

[¶19] Tompkins attempts to sidestep the plain language of the statute by citing to Alaska cases that have recognized strict safeguards against government manipulation of an independent blood-alcohol test.  
See
 
Moberg v. Municipality of Anchorage
, 152 P.3d 1170, 1174 n.5 (Alaska Ct. App. 2007); 
McCormick v. Municipality of Anchorage
, 999 P.2d 155, 163 (Alaska Ct. App. 2000).  The Alaska statute providing for an independent blood-alcohol test is much broader than North Dakota’s statute.  In addition to the rights afforded under N.D.C.C. § 39-20-02, the Alaska statute provides:

The person who administers the chemical test shall clearly and expressly inform the person tested of that person’s right to an independent test described under this subsection, and, if the person being tested requests an independent test, the department shall make reasonable and good-faith efforts to assist the person being tested in contacting a person qualified to perform an independent chemical test of the person’s breath or blood.

Alaska Stat. § 28.35.033(e).

[¶20] The Alaska case law relied upon by Tompkins is of little value to this case because of the differences in the rights and duties afforded under the two statutes.  The Alaska statute places affirmative duties on law enforcement to assist the accused in receiving an independent blood-alcohol test.  North Dakota’s statute is confined to assuring the accused an independent blood-alcohol test if he requests and arranges one, with no affirmative duties placed on law enforcement regarding the independent test.  The Alaska court’s evaluation of government manipulation is necessarily more strict than ours because of the increased level of government responsibility under the Alaska statute.

[¶21] Under the rights afforded by N.D.C.C. § 39-20-02, Tompkins was not prejudiced by the mailing of the blood sample to the State Crime Lab for testing.  The lab technician testified the sample she receives is simply a specimen tube with an identification number, leaving her no way to tell whether the test was requested by an individual, a medical examiner, or even a coroner.  Tompkins was unable to provide any evidence of government manipulation of the test results.  The routine, anonymous testing of the blood sample at the State Crime Lab does not rise to the level of impermissible government interference.  More importantly, law enforcement did not tell the nurse where to send the blood for testing, and neither did Tompkins.  The nurse was not acting as a State agent when she sent the sample to the State Crime Lab for testing.

[¶22] Tompkins properly exercised his right to an independent blood test under N.D.C.C. § 39-20-02.  He received this test with the help of the State, which accommodated his request without impermissible interference.  Tompkins received what he was entitled to under the statute.

 

III

[¶23] The district court’s order underlying its criminal judgment granted Tompkins’ motion to suppress the blood test results, but denied his motion to suppress the breath test results.  We hold that the State did not impermissibly interfere with Tompkins’ right to an independent blood test under N.D.C.C. § 39-20-02.  While the blood test should not have been suppressed due to excessive governmental interference with Tompkins’ right to obtain an independent test, this does not affect the criminal judgment in light of Tompkins’ conditional guilty plea.  We affirm the district court’s criminal judgment.

[¶24] Dale V. Sandstrom

Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.